## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## NEWNAN DIVISION

-------------------------------------------------------

**MANDY MORRISON,** individually, and    :
on behalf of all others similarly situated,    :

                            :

           Plaintiff,             :

                            :     Civil Action No.: _____

           v.                  :

                            :     **JURY TRIAL DEMANDED**

**FLEETCOR TECHNOLOGIES**          :
**OPERATING COMPANY, LLC**        :

                            :

           Defendant.         :

-------------------------------------------------------

## COLLECTIVE AND CLASS ACTION COMPLAINT

Plaintiff, **MANDY MORRISON** (hereinafter referred to as "Plaintiff") individually and on behalf of all others similarly situated, by and through her attorneys, **BROWN, LLC** and **THE ORLANDO FIRM, P.C.**, hereby brings this Collective and Class Action Complaint against Defendant, FleetCor Technologies Operating Company, LLC (hereinafter referred to as "Defendant"), and alleges of her own knowledge and conduct and upon information and belief as to all other matters, as follows:

## INTRODUCTION

1.     Plaintiff brings this action, individually and as a collective action on behalf of all other call center agents who elect to opt-in to this action to recover unpaid overtime wages, liquidated damages, and reasonable attorneys' fees and costs

as a result of Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* and attendant regulations at 29 C.F.R. § 516, *et seq.*

2.     Additionally, Plaintiff brings this action, individually and as a Rule 23 class action on behalf of all CCAs to recover unpaid overtime wages, liquidated damages, pre-judgment interest, and reasonable attorneys' fees and costs as a result of Defendant's violation of the Kentucky's Wages and Hours Act, Ky. Rev. Stat. Ann. §§ 337.010, *et seq.* ("KRS 337.010"), and Kentucky's Wages and Hours Act, Ky. Rev. Stat. Ann. §§ 337.020, *et seq.* ("KRS 337.020").

3.     Defendant provides customer service outsourcing services to global clients in industries including travel and hospitality, financial services, and telecommunications.

4.     Plaintiff and the members of the putative collective and class were employed by Defendant as call center agents and were responsible for handling telephone calls from Defendant's clients and customers.

5.     The U.S. Department of Labor recognizes that customer support jobs, like those held by Defendant's call center agents, are homogenous and it issued Fact Sheet #64 in July 2008 to alert customer support employees to some of the abuses which are prevalent in the industry.

6.     One of those abuses, which are at issue in this case, is the employer's refusal to pay call center agents for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id.*

7.     More specifically, Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id.*

8.     Defendant failed to pay call center agents for their pre-shift time spent starting up their computers, logging into required systems and applications, and reviewing work-related e-mails and other information, including time worked in excess of forty (40) hours in a workweek.

9.     Additionally, Plaintiff and other call center agents were victims of Defendant's common policy of failing to incorporate their non-base compensation (such as Incentive Bonuses) into their regular rates of pay, for purposes of calculating their hourly overtime rates. As a result, there were many weeks throughout the statutory period in which Plaintiff and other call center agents received an hourly rate of overtime hours of less than "one and one-half times the[ir]

regular rate," in violation of the FLSA. 29 U.S.C. § 207(a)(1). *See* 29 U.S.C. § 207(e) ("As used in this section the 'regular rate' at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee").

10.     Further, when call center agents were disconnected from their systems and applications due to technical issues, Defendant required them to remain at their computers and attempt to log back in, but refused to pay them for this time.

11.     Since working remotely as of March 2020, call center agents perform considerable off-the-clock work shutting-down/logging-off the computer after being clocked-out for their scheduled shifts.

12.     Plaintiff seeks unpaid overtime wage and liquidated damages pursuant to the FLSA on behalf of herself and the "FLSA Collective," defined as: *all current and former call center agents who worked for Defendant in the United States at any time within the three years preceding the commencement of this action and the date of judgment. See* 29 U.S.C. §§ 207(a)(1); 216(b).

## JURISDICTION AND VENUE

13.     This Court has subject-matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under 29 U.S.C. § 201, *et seq*.

14.     This Court has personal jurisdiction over Defendant because it is because it is headquartered in Georgia.

15.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this district.

## PARTIES

16.     Plaintiff Mandy Morrison is a resident of Lexington, Kentucky, and worked for Defendant from approximately August 27, 2019 to present.

17.      She physically worked in Defendant's call center located in Lexington, Kentucky as a call center agent from approximately August 27, 2019 to March 2020.

18.     From approximately March 2020 to the present, Plaintiff has continued working for Defendant remotely from home.

19.     Defendant FleetCor Technologies Operating Company, LLC is a Louisiana limited liability company with a principal address located at 5445 Triangle Parkway, Suite 400, Norcross, GA 30092.

20.     Defendant maintains and operates a call center located in Lexington, Kentucky.

21.     Defendant's registered agent for service of process in Georgia is Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, GA 30092.

## GENERAL ALLEGATIONS

22.   The foregoing paragraphs are hereby incorporated by reference as though the same were fully set forth at length herein.

23.   Defendant employed call center agents to handle inbound telephone calls from Defendant's clients and customers.

24.   At all times relevant to this action, Defendant was an enterprise whose annual gross volume of sales made or business done exceeded $500,000.

25.   At all times relevant to this action, Defendant was an enterprise that has had employees engaged in commerce or in the production of goods for commerce, and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce.

26.   In addition, call center agents were themselves engaged in commerce, and thus subject to individual coverage under the FLSA.

27.   At all times relevant to this action, Defendant was an employer under 29 U.S.C. § 203(d) of the FLSA, subject to the provisions of 29 U.S.C. § 201, *et seq*.

28.   Call center agents were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

29.   Defendant "suffered or permitted" call center agents to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

30.    Defendant classified call center agents as non-exempt employees and paid them on an hourly basis without any guaranteed, predetermined amount of pay per week.

31.    From August 27, 2019, to in or about March 2020, call center agents worked in office at Defendant's Lexington, Kentucky location.

32.    From in or about March 2020 to the present, call center agents work from home for Defendant.

33.    In order to perform their jobs, call center agents were required to start up and log in to various computer systems and applications that were necessary for them to retrieve and process information during calls.

34.    However, call center agents were not actually "clocked in" for their shifts until *after* the computer start-up/log-in process was complete, meaning that they performed work for which they were not compensated.

35.    Defendant failed to pay call center agents for time spent logging into required systems and applications before their shifts.

36.    Defendant failed to pay call center agents for time spent during their shifts attempting to log back into systems and applications after being disconnected due to technical issues.

37.    The off-the-clock time call center agents spent starting up and logging into required systems and applications directly benefitted Defendant.

38.     The start-up/log-in process was an essential part of the call center agents' job responsibilities.

39.     At all relevant times, Defendant controlled call center agents' work schedule, duties, protocols, applications, assignments and employment conditions.

40.     Despite knowing that Plaintiff and other call center agents performed start-up/log-in activities before and during their shifts, Defendant and their managers did not make any effort to stop or otherwise disallow this off-the-clock work and instead allowed and permitted it to happen.

41.     Defendant possesses, controls and/or has access to information and electronic data that shows the times call center agents started up and logged into their computer systems and applications each day and the time they logged into their telephone systems.

42.     Defendant was able to track the amount of time that call center agents spent in connection with start-up/log-in activities; however, Defendant failed to pay call center agents for such time.

43.     Defendant used its adherence and attendance policies against call center agents by disciplining call center agents if they were not logged into their phones and ready to handle calls by the start of their scheduled shift time.

44.     These policies coerced call center agents into beginning the process of starting up and logging into their computers systems and applications, and reading company e-mails and instructions prior to their start of their scheduled shift time.

45.     When call center agents were disconnected from their systems and applications due to technical issues, Defendant required them to remain at their computers and attempt to log back in, but refused to pay them for this time.

46.     Defendant's policies and practices deprived call center agents of wages owed for the start-up/log-in activities described above.

47.     Because call center agents often worked in excess of forty (40) hours in a workweek, Defendant's pay practices also deprived them of overtime pay at a rate of 1.5 times their regular rate of pay.

48.     Plaintiff regularly worked in excess of forty (40) hours in a workweek and was not paid for all hours worked in such weeks as a result of the violations alleged herein.

49.     Defendant claims to be a leader in its field, employs hundreds of call center agents, and knew or should have known that call center agents' time spent in connection with the preliminary start-up/log-in process is compensable under the FLSA and KRS.

50.     Defendant also failed to incorporate call center agents' non-base compensation (such as "Incentive Bonuses") into their regular rates of pay, for purposes of calculating their hourly overtime rates.

51.     As a result, there were many weeks throughout the statutory period in which Plaintiff and other call center agents received an hourly rate for overtime hours less than "one and one-half times the[ir] regular rate," in violation of the FLSA. 29 U.S.C. § 207(a)(1). *See* 29 U.S.C. § 207(e) ("As used in this section the 'regular rate' at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee").

52.     Further, since working remotely as of March 2020, call center agents perform considerable off-the-clock shutting-down/logging-off the computer after being clocked-out for their scheduled shifts.

53.     Defendant failed to pay call center agents for time spent logging off required systems and applications in a particular order designated by Defendant after clocking-out from their shift.

54.     Accordingly, call center agents performed post-shift work for which they were not compensated.

## FLSA COLLECTIVE ACTION ALLEGATIONS

55.     The foregoing paragraphs are hereby incorporated by reference as though the same were fully set forth at length herein.

56.     This action is brough as a collective action to recover unpaid compensation and overtime compensation, liquidated damages, unlawfully withheld wages, statutory penalties, and damages owed to Plaintiff and all similarly situated current and former employees of Defendant.

57.     Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on her own behalf and on behalf of the FLSA Collective, defined as:

> *All current and former call center agents who worked for Defendant in the United States at any time within three (3) years preceding the commencement of this action and the date of judgment ("FLSA Collective").*

58.     Plaintiff reserves the right to amend this definition as necessary.

59.     Excluded from the proposed FLSA Collective are Defendant's executives, administrative, and professional employees, including computer professionals and outside sales persons.

60.     With respect to the claims set forth in this action, a collective action under the FLSA is appropriate because the putative members of the FLSA Collective are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b) because: (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practices, policy, or plan; and (c) their claims are based upon the same factual and legal theories.

61.     The employment relationships between Defendant and every FLSA Collective member is the same and differ only by name, location, and rate of pay.

The key issues – whether Defendant failed to pay call center agents for preliminary start-up/log-in time, post-shift shut-down/log-off time, and whether such time is compensable – do not vary substantially among the FLSA Collective members.

62.     Plaintiff estimates the FLSA Collective, including both current and former employees over the relevant period, will include over one thousand members. The precise number of the FLSA Collective members should be readily available from a review of Defendant's personnel and payroll records.

63.     Plaintiff will request the Court to authorize notice to all current and former similarly situated employees employed by Defendant, informing them of the pendency of this action and their right to "opt-in" to this lawsuit pursuant to 29 U.S.C. § 216(b), for the purpose of seeking unpaid compensation, overtime compensation, and liquidated damages under the FLSA.

## RULE 23 CLASS ACTION ALLEGATIONS

64.     The foregoing paragraphs are hereby incorporated by reference as though fully set forth at length herein.

65.     Plaintiff brings this action individually, and on behalf of the following state-wide class of similarly situated individuals, pursuant to Rule 23 of the Federal Rules of Civil Procedure:

> *All current and former call center agents who worked for Defendant in Kentucky at any time within the five (5) years preceding the commencement of this action and the date of judgment ("Rule 23 Kentucky Class").*

66.     The members of the Rule 23 Kentucky Class are so numerous that joinder of all members is impractical. The Rule 23 Kentucky Class members may be informed of the pendency of this class action by direct mail, e-mail, and text message.

67.     Pursuant to Federal Rule of Civil Procedure 23(a)(2), there are questions of law and fact common to the Rule 23 Kentucky Class, including, but not limited to:

A.     Whether the time Rule 23 Kentucky Class members spend on start-up/log-in activities prior to "clocking in" for each shift is compensable time;

B.     Whether the time Rule 23 Kentucky Class members pend on shut-down/log-out activities subsequent to "clocking out" for each shift is compensable time;

C.     Whether Rule 23 Kentucky Class members are owed overtime (above the federally mandated overtime wages due under the FLSA) for time spent performing start-up/log-in and shut-down/log-out activities, and if so, the appropriate amount thereof; and

D.     Whether Defendant was required to incorporate Rule 23 Kentucky Class members' non-base compensation (such as "Incentive Bonuses") into their regular rates of pay, for purposes of calculating their hourly overtime rates.

68.     Plaintiff's claims are typical of the claims of the Rule 23 Kentucky Class members. Plaintiff is a current employee of Defendant employed as a call center agent who has suffered similar injuries as those suffered by the Rule 23 Kentucky Class members as a result of Defendant's failure to pay wages and overtime compensation. Defendant's conduct of violating the KRS has impacted the Rule 23 Kentucky Class in the exact same way.

69.     Plaintiff will fairly and adequately represent and protect the interests of the Rule 23 Kentucky Class. Plaintiff is similarly situated to the Rule 23 Kentucky Class and has no conflict with the Rule 23 Kentucky Class members.

70.     Plaintiff is committed to pursuing this action and has retained competent counsel experienced in class action litigation.

71.     Pursuant to Rule 23(b)(1), (b)(2), and/or (b)(3) of the Federal Rules of Civil Procedure, this action is properly maintained as a class action because:

A.      The prosecution of separate actions by or against individual members of the Rule 23 Kentucky Class would create a risk of inconsistent or varying adjudication with respect to individual members of the Rule 23 Kentucky Class that would establish incompetent standards of conduct for Defendant;

B.      Defendant, by failing to pay wages and overtime compensation when they became due and owing in violation of the KRS, has acted or refused to act on ground generally applicable to the Rule 23 Kentucky Class, thereby making

equitable relief appropriate with respect to the Rule 23 Kentucky Class as a whole; and

C.     The common questions of law and fact set forth above applicable to the Rule 23 Kentucky Class predominate over any questions affecting only individual members and a class action is superior to other available methods for the fair and efficient adjudication of the case, especially with respect to considerations of consistency, economy, efficiency, fairness and equity, as compared to other available methods for the fair and efficient adjudication of the controversy.

72.     A class action is also superior to other available means for the fair and efficient adjudication of this controversy because individual joinder of the parties is impractical. The Rule 23 Maryland Class action treatment will allow a large number of similarly situated person to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense if these claims were brought individually.

73.     Additionally, the damages suffered by each Rule 23 Kentucky Class member may be relatively small, the expenses and burden of individual litigation would make it difficult for the Rule 23 Kentucky Class members to bring individual claims. The presentation of separate action by individual Rule 23 Kentucky Class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant, and/or substantially impair or

impede the ability of each member of the Rule 23 Kentucky Class to protect his or her interests.

## COUNT I
## FAIR LABOR STANDARDS ACT
## 29 U.S.C § 201, *se seq.*
## <u>FAILURE TO PAY OVERTIME COMPENSATION</u>
## <u>(Brought on and individual and collective basis)</u>

74.     The foregoing paragraphs are hereby incorporated by reference as if fully set forth at length herein.

75.     Pursuant to Section 206(b) of the FLSA, employees must be compensated for every hour worked in a workweek.

76.     Moreover, under Section 207(a)(1) of the FLSA, employees must be paid overtime equal to 1.5 times the employee's regular rate of pay, for all hours worked in excess of forty (40) hours per week.

77.     In most workweeks, Plaintiff and the FLSA Collective members worked over forty (40) hours.

78.     Defendant required Plaintiff and the FLSA Collective members to perform start-up/log-in activities before and during their shifts, but failed to pay these employees the federally mandated overtime compensation for all time worked.

79.     Defendant required Plaintiff and the FLSA Collective members to perform shut-down/log-out activities after their shifts, but failed to pay these employees the federally mandated overtime compensation for all time worked.

80.     The start-up/login and shut-down/log-out activities performed by Plaintiff and the FLSA Collective members every session are an essential part of the jobs and these activities and the time associated with these activities is not *de minimis*.

81.     In workweeks in which Plaintiff and the FLSA Collective members worked in excess of forty (40) hours, the uncompensated start-up/log-in and shut-down/log-out time should have been paid at the federally mandated rate of 1.5 times each employee's regular hourly wage. 29 U.S.C. § 207.

82.     Defendant also failed to incorporate Plaintiff and the FLSA Collective members' non-base compensation (such as "Incentive Bonuses") into their regular rates of pay, for purposes of calculating their hourly overtime rates.

83.     As a result, there were many weeks throughout the statutory period in which Plaintiff and the FLSA Collective members received an hourly rate for overtime hours of less than "one and one-half times the[ir] regular rate," in violation of the FLSA. 29 U.S.C. § 207(a)(1). *See* 29 U.S.C. § 207(e) ("As used in this section the 'regular rate' at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee").

84.     Defendant's violations of the FLSA were knowing and willful. Defendant knew or could have easily determined how long it took for its call center

agents to perform start-up/log-in activities and Defendant could have properly compensated Plaintiff and the FLSA Collective members for such time, but did not.

85.     The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (and unpaid overtime if applicable) plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

**COUNT II**
**KENTUCKY WAGES AND HOURS ACT**
**Ky. Rev. Stat. Ann. §§ 337.010, *et seq.***
**<u>FAILURE TO PAY OVERTIME</u>**
**<u>(Brought on and individual and class basis)</u>**

86.     The foregoing paragraphs are hereby incorporated by reference as though fully set forth at length herein.

87.     Defendant has employed Plaintiff and the Rule 23 Kentucky Class members within the meaning of the KRS § 337.010(1)(e) and Plaintiff and the Rule 23 Kentucky Class members have not been exempt from the protections of the Kentucky's Wages and Hours Act.

88.     Plaintiff and the Rule 23 Kentucky Class members have regularly worked in excess of forty (40) hours per workweek.

89.     Defendant required Plaintiff and the Rule 23 Kentucky Class members to perform start-up/log-in activities before and during their shifts, but failed to pay these employees overtime compensation for all time worked.

90.     Defendant required Plaintiff and the Rule 23 Kentucky Class members to perform shut-down/log-out activities after their shifts, but failed to pay these employees overtime compensation for all time worked.

91.     The start-up/log-in and shut-down/log-out activities performed by Plaintiff and the Rule 23 Kentucky Class members every session are an essential part of their jobs and these activities and the time associated with these activities is not *de minimis*.

92.     In workweeks in which Plaintiff and the Rule 23 Kentucky Class members worked in excess of forty (40) hours, the uncompensated start-up/log-in and shut-down/log-out time should have been paid at 1.5 times each employee's regularly hourly wage.

93.     Defendant also failed to incorporate Plaintiff and the Rule 23 Kentucky Class members' non-base compensation (such as "Incentive Bonuses") into their regular rates of pay, for purposes of calculating their hourly overtime rates.

94.     As a result, there were many weeks throughout the statutory period in which Plaintiff and the Rule 23 Kentucky Class members received an hourly rate for overtime hours of less than one and one-half times their regular rate.

95.     Defendant's conduct and practices, described herein, has been willful, intentional, unreasonable, arbitrary, and in bad faith.

96.     As a result of Defendant's violations of KRS § 337.285, Plaintiff and the Rule 23 Kentucky Class members are entitled to recover unpaid overtime wages dating five (5) years back, KRS § 413.120(2), plus an additional equal amount in liquidated damages, reasonable attorneys' fees, and costs of this action, pursuant to KRS § 337.385.

**COUNT III**
**KENTUCKY WAGES AND HOURS ACT**
**Ky. Rev. Stat. Ann. §§ 337.020, *et seq.***
**FAILURE TO PAY WAGES**
**(Brought on and individual and class basis)**

97.     The foregoing paragraphs are hereby incorporated by reference as though fully set forth at length herein.

98.     Defendant paid Plaintiff on an hourly basis.

99.     Defendant agreed to pay to pay Plaintiff and the Rule 23 Kentucky Class for all hours worked, as evidenced by Defendant paying them an hourly rate of pay, furnishing them paystubs showing their agreed hourly rates, and instructing them to use Defendant's time-keeping system in order to be paid, or not paid, for any time.

100.    Defendant failed to pay Plaintiff and the Rule 23 Kentucky Class for all hours worked, contrary to the agreement.

101.   Defendant required Plaintiff and the Rule 23 Kentucky Class members to perform start-up/log-in activities before and during their shifts, but failed to pay these employee compensation for all time worked.

102.   Defendant required Plaintiff and the Rule 23 Kentucky Class members to perform shut-down/log-out activities after their shifts, but failed to pay these employees compensation for all time worked.

103.   The start-up/log-in and shut-down/log-out activities performed by Plaintiff and the Rule 23 Kentucky Class members every session are an essential part of their jobs and these activities and the time associated with these activities is not *de minimis*.

104.   As a result, there were many weeks throughout the statutory period in which Plaintiff and the Rule 23 Kentucky Class members received no compensation for compensable work performed.

105.   Defendant's conduct and practices, described herein, has been willful, intentional, unreasonable, arbitrary, and in bad faith.

106.   As a result of Defendant's violations of KRS § 337.020, *et seq*., Plaintiff and the Rule 23 Kentucky Class members are entitled to recover unpaid wages and compensation dating five (5) years back, plus an additional equal amount in liquidated damages, reasonable attorneys' fees, and costs of this action, pursuant to KRS § 337.385.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff, on behalf of herself and the FLSA Collective and Rule 23 Kentucky Class, respectfully requests that this Court grant the following relief against Defendant:

A.      Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

B.      Certifying this action as a class action (for the Rule 23 Kentucky Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's state law claim (Count II);

C.      Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all FLSA Collective members and Rule 23 Class members, and permitting Plaintiff to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class/collective members of their rights by law to join and participate in this lawsuit;

D.      Designating Plaintiff as the representative of the FLSA Collective and the Rule 23 Kentucky Class, and undersigned counsel as Class counsel for the same;

E.      Finding that Defendant willfully violated the FLSA and the Department of Labor's attendant regulations as cited herein;

F.     Finding that Defendant violated KRS § 337.010, *et seq.* and KRS § 337.020, *et seq.*, and that said violations were intentional, willfully oppressive, fraudulent and malicious;

G.     Granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff and the FLSA Collective and the Rule 23 Kentucky Class the full amount of compensatory damages and liquidated damages available by law;

H.     Assessing punitive damages against Defendant in an amount to sufficient to deter Defendant from engaging in any such conduct in the future and as an example to other employees;

I.     Awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute;

J.     Granting an incentive award for the Lead Plaintiff for serving as representative of the FLSA Collective and Rule 23 Kentucky Class members in this action;

K.     Awarding pre- and post-judgment interest to Plaintiff on these damages; and

L.     Awarding such other and further relief as this Court deems appropriate.

## **JURY DEMAND**

Plaintiff Mandy Morrison, individually and on behalf of all other FLSA Collective. And Rule 23 Kentucky Class members, by and through her attorneys,

hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above entitled claims.

Respectfully submitted,

**THE ORLANDO FIRM, P.C.**

Dated: September 24, 2021

/s/ Roger W. Orlando
Roger Orlando, Esq.
315 West Ponce De Leon Ave,
Suite 400
Decatur, GA 30030
T: (973) 898-0404
roger@orlandofirm.com
*Local Counsel for Plaintiff*

Jason T. Brown (PHV)
Nicholas Conlon (PHV)
Edmund C. Celiesius (PHV)
**BROWN, LLC**
111 Town Square Place, Suite 400
Jersey City, NJ 07310
P: (201) 630-0000
jtb@jtblawgroup.com
nicholasconlon@jtblawgroup.com
ed.celiesius@jtblawgroup.com

*Lead Counsel for Plaintiff*

## <u>DEMAND TO PRESERVE EVIDENCE</u>

The Defendant is hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's, the FLSA Collective's, and/or the Rule 23 Kentucky Class's employment, to their potential claims and their claims to damages, to any defense to same, including, but not limited to, electronic data storage, employment files, files, memos, job descriptions, text messages, e-mails, spread sheets, images, cache memory, payroll records, paystubs, time records, time sheets and any other information and/or data which may be relevant to any claim or defense in this litigation.