IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| **MANDY MORRISON,** individually, and on behalf of all others similarly situated | : : : | |
| Plaintiff, | : : | |
| v. | : : | Civil Action No.: 21-03950-TWT |
| **FLEETCOR TECHNOLOGIES OPERATING COMPANY, LLC, and FLEETCOR TECHNOLOGIES, INC.** | : : : : | |
| Defendants. | : : | |

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF COLLECTIVE AND CLASS ACTION SETTLEMENT
AND FOR CERTIFICATION OF RULE 23 CLASS FOR SETTLEMENT
PURPOSES ONLY AND INCORPORATED BRIEF IN SUPPORT**

Plaintiff, Mandy Morrison ("Plaintiff"), and Defendants FLEETCOR

Technologies Operating Company, LLC ("FLEETCOR, LLC") and FLEETCOR

Technologies, Inc. (collectively, "Defendants") (collectively, the "Parties"), have

reached what they believe to be a full and fair resolution for the Plaintiff, Opt-In

Plaintiffs and Rule 23 Class Members (collectively, the "Settlement Class

Members").[1] Plaintiff, on behalf of herself and all others similarly situated, and

without objection from Defendants, respectfully submits the Parties' proposed

---

[1] Any capitalized terms not defined herein have the meaning ascribed to them in the Collective and Class Action Settlement Agreement and Release (the "Settlement"), which is attached hereto as Exhibit 1.

$1,250,000 Settlement for the Court's approval. As described herein, the proposed Settlement satisfies all criteria for preliminary approval. As such, Plaintiff respectfully requests that the Court: (1) grant preliminary approval of the Settlement; (2) provisionally certify the Rule 23 Class for settlement purposes only; (3) appoint Plaintiff as Class Representative and Plaintiff's counsel as Class Counsel under Fed. R. Civ. P. 23; (4) approve the proposed Settlement procedures, including the procedures for notifying Rule 23 Class Members about the Settlement; (5) approve, as to form and content, the Notice of Class Action Settlement (the "Notice") and Verification Form (attached to the Settlement as Exhibits 1 and 2, respectively) and order their distribution in accordance with the terms of the Settlement; (6) appoint Simpluris, Inc. ("Simpluris") as the Settlement Claims Administrator; and (7) approve the proposed schedule for final approval of the Settlement, including scheduling the Fairness Hearing.

## I.    **INTRODUCTION**

Plaintiff seeks preliminary approval of the Collective and Class Action Settlement Agreement and Release (the "Settlement"), which provides for a settlement fund of *$1.25 million* to resolve the wage-and-hour claims of Plaintiff, 165 Opt-in Plaintiffs who were/are hourly-paid call center agents for FLEETCOR, LLC and/or an acquired predecessor company in Kentucky, Georgia, Kansas, and Tennessee; and a Rule 23 Class consisting of approximately 819 such call center

agents who worked in Kentucky. *See* Settlement. Plaintiff asserts that Defendants violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*; Kentucky Wages and Hours Act, Ky. Rev. Stat. Ann. §§ 337.010, *et seq.* ("KRS 337.010"); and Kentucky Wages and Hours Act, Ky. Rev. Stat. Ann. §§ 337.020, *et seq.* ("KRS 337.020"). Specifically, Plaintiff alleges that Defendants failed to compensate call center agents for time spent performing compensable work before the start of their scheduled shifts, during periods when reconnecting after disconnection due to technical issues, for work performed after their scheduled shifts, and failed to incorporate non-base compensation into their regular rates of pay for purposes of determining their overtime rates. Defendants adamantly deny Plaintiff's allegations and maintain they have, at all times, properly paid Plaintiff and all other employees in accordance with applicable laws.

After extensive, arm's-length negotiations, which included a full-day mediation before A. Lee Parks (the "Mediator") and continuing negotiations over several days aided by the Mediator, which was preceded by independent factual investigations and formal and informal discovery, the Parties believe that they have reached a fair compromise of the claims. *See* Declaration of Jason T. Brown ("Brown Decl.") (attached hereto as Exhibit 2).

For settlement purposes only and the reasons below, Plaintiff requests that the Court enter the accompanying [Proposed] Preliminary Approval Order: (1) granting

preliminary approval of the Settlement Agreement; (2) provisionally certifying the Rule 23 Class for settlement purposes only; (3) appointing Plaintiff as Class Representative and Plaintiff's counsel as Class Counsel under Fed. R. Civ. P. 23; (4) approving the proposed Settlement procedures, including the procedures for notifying Rule 23 Class Members about the Settlement; (5) approving, as to form and content, the Notice and Verification Form and ordering their distribution in accordance with the terms of the Settlement; (6) appointing Simpluris as the Settlement Claims Administrator; and (7) approving the proposed schedule for final approval of the Settlement, including scheduling the Fairness Hearing.

## II.    **BACKGROUND**

On September 24, 2021, Plaintiff, who worked for FLEETCOR, LLC in Lexington, Kentucky, filed a class and collective action lawsuit. Plaintiff sought to represent an FLSA collective consisting of hourly-paid, non-exempt call center agents. Plaintiff also alleged putative Rule 23 class action claims under KRS 337.010 and KRS 337.020.

On April 19, 2022, after a stipulation by the Parties, the putative collective action was conditionally certified pursuant to § 216(b) of the FLSA.[2] (ECF Doc. No. 41). Upon conclusion of the 60-day opt-in period, 169 individuals (in addition to the

---

[2] Defendants stipulated to conditional certification, reserving their right to, *inter alia,* subsequently seek decertification of the conditionally certified FLSA collective action in its entirety.

Plaintiff) chose to opt-in to this action, four (4) of whom subsequently filed notices to withdraw their consent. On February 6, 2023, the Parties participated in a full-day mediation overseen by Mediator Parks and, after several more days of negotiations aided by Mediator Parks, reached a settlement in principle to resolve all matters pertaining to, arising from, and associated with this action. Brown Decl. ¶ 5.

## III.    SUMMARY OF SETTLEMENT TERMS

The Settlement provides that Defendants will pay up to $1,250,000 to resolve this action, which includes payments to the Plaintiff, Opt-In Plaintiffs, Rule 23 Class Members, Class Counsel's attorneys' fees and litigation costs, Settlement Claims Administrator expenses, and the fees and costs of the Mediator. *Settlement*, § 1.18. In addition to the $1,250,000 settlement amount, Defendants will make a separate payment to Plaintiff in exchange for a general release of claims, and Defendants will also pay their share of federal and state payroll or other employment taxes. *Id.*, § 1.18. The amount available for payments to Settlement Class Members after deduction for counsel, administrator, and Mediator fees and costs is the "Net Settlement Fund." *Id.* § 1.20. The Net Settlement Fund is estimated to be $769,629.33, which according to Class Counsel's detailed calculations of the Settlement Class Members' pay and timekeeping data, is the amount of wages they would stand to recover on their FLSA and Kentucky claims if they were found to

have worked approximately ten (10) minutes off the clock per day. Brown Decl. ¶ 6.

The Net Settlement Fund will be divided into a Rule 23 Settlement Fund (80%) and an FLSA Settlement Fund (20%). *Agreement*, § 6.2(B), (C). The Rule 23 Settlement Fund is estimated to be a maximum of $615,703.47 and will be allocated on a *pro rata* basis to each Rule 23 Class Member based on the number of workweeks the Rule 23 Class Member was employed during the period September 24, 2016 to February 6, 2023. The ultimate Rule 23 Settlement Fund to be paid by Defendants will be 80% of the Net Settlement Fund less amounts allocated to Rule 23 Class Members who submit timely Opt-Out Statements and/or Rule 23 Class Members (excluding Opt-In Plaintiffs) who do not submit timely Verification Forms. The Rule 23 Settlement Fund will then be distributed to the Rule 23 Class Members (excluding those who submit a timely Opt-Out Statement and/or who fail to submit a timely Verification Form) based on their allocated portion of the Rule 23 Settlement Fund. *Id.* § 6.2(C). The remaining twenty percent (20%) of the Net Settlement Fund (*i.e.,* approximately $153,925.87) will be allocated to the FLSA Settlement Fund. *Id.* § 6.2(B). The FLSA Settlement Fund will be allocated among the Plaintiff and 165 Opt-In Plaintiffs on a *pro rata* basis based on the number of workweeks employed during his or her applicable three-year statute of limitations

period.  For tax purposes, 50% of each settlement payment will be allocated to wage damages and 50% to non-wage damages. *Settlement*, § 6.4.[3]

In addition to the Net Settlement Fund, Class Counsel will request up to one-third of the Gross Settlement Fund in attorneys' fees ($416,666.67); request up to $27,000 in reimbursement of reasonable litigation costs and expenses, *id.* at § 6.3; and $13,000 to Plaintiff in exchange for her general release of claims against Defendants.[4] *Id.* at § 6.5. Class Counsel will file a motion for approval of the proposed attorneys' fees, costs, and additional consideration in exchange for general release at least fourteen (14) days prior to the Fairness Hearing.

The release applicable to Opt-in Plaintiffs and Rule 23 Class Members is limited to all FLSA claims and all claims under Kentucky state and local wage-and-hour laws and derivative claims, including all claims that were or could have been pled in this action from September 24, 2016, through the Final Effective Date. *Settlement,* § 1.29.  In short, as set forth more fully in the Settlement Agreement, Rule 23 Class Members who do not submit a timely Opt-Out Statement and who submit a timely Verification Form and/or who are Opt-In Plaintiffs will release Defendants from state and local law wage-and-hour claims and derivative claims.

---

[3] The funds associated with any checks that remain uncashed after 120 days will be void. *Settlement*, §§ 6.1, D; 7.1.

[4] The additional compensation to Plaintiff in return for a general release is in addition to any portion of the FLSA Settlement Fund and Rule 23 Settlement Fund to which she may be eligible to receive. *Settlement*, § 6.5

*Id.* at § 7.1. Rule 23 Class Members who deposit or otherwise cash their settlement checks and Opt-In Plaintiffs will release Defendants from FLSA claims and all other state and local wage and hour claims, and derivative claims through the date of the Final Effective Date, including all claims that were or could have been pled in this action. *Id.* at §§ 7.1 & 7.2. The Plaintiff will provide a general release of all legally releasable claims, whether known or unknown, based upon any conduct, action, or omission by Defendants up to and including the Final Effective Date, in exchange for additional consideration in the amount of $13,000.00. *Id.* at § 7.3.

The Settlement Claims Administrator will mail each Rule 23 Class Member a copy of the Notice (and Verification Form), which details each Rule 23 Class Member's allocated portion of the Rule 23 Settlement Fund, their options to object and/or exclude themselves from the Settlement, instructions for completing the Verification Form, and how the Settlement affects their rights. *Settlement*, *Ex. 1*. If a Rule 23 Class Member is not satisfied with the allocated amount, he or she can elect to submit a timely Opt-Out Statement and retain his or her claims or submit a timely Objection to the Settlement. *Id.* at § 1.2. Additionally, Rule 23 Class Members (excluding Opt-In Plaintiffs) can also exclude themselves and not release any claims by not submitting the Verification Form. The Parties have agreed to use Simpluris as the Settlement Claims Administrator. Brown Decl. ¶ 16. Simpluris previously served as the administrator for purposes of sending notice of this action to members

of the conditionally-certified FLSA collective. *Id.* at ¶ 17. Simpluris has estimated that its fees and costs will be approximately $13,177.00. *Id.* at ¶ 18.

## IV.    **LEGAL ANALYSIS**

### A.    **Approval Under Fed. R. Civ. P. 23**

Fed. R. Civ. P. 23(e) provides that settlement of claims of a certified class is subject to court approval. In general, settlement of class actions is favored as a matter of "strong judicial policy." *See Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 658 (E.D. Cal. 2008) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).

Approval of class action settlements is a three-step process: (1) preliminary approval of the settlement at an informal hearing; (2) dissemination of mailed and/or published notice of the settlement to all affected class members; and (3) a "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy and reasonableness of the settlement may be presented. *Manual for Complex Lit.*, at § 21.632-34; *see Tenn. Ass'n of Health Maint. Orgs. Inc. v. Grier*, 262 F.3d 559, 565-66 (6th Cir. 2001). This procedure, used by courts in this Circuit and endorsed by the leading class action treatise, safeguards the due process rights of absent class members and enables the district court to fulfill its roles as the guardian of class interests. *See* 2 Herbert B Newberg & Alba Conte,

*Newberg on Class Actions*, at § 11.22, *et seq.* With this motion, the Parties request that the Court take the first step in the process by granting preliminary approval of the Settlement.

The standard for granting preliminary approval is low – a proposed settlement will be preliminarily approved if it falls "within the range of possible approval," or, otherwise stated, if there is "probable cause" to notify the class of the proposed settlement and "to hold a full-scale hearing on its fairness[.]" *In re Mid-Atl. Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983).

The purpose of preliminary evaluation of a proposed class action settlement is to determine whether the settlement is within the "range of reasonableness," and thus whether notice to the class of the settlement's terms and the scheduling of a formal fairness hearing is worthwhile. *See Newberg on Class Actions*, § 11.25, at 11-36, 11-37. If so, the Court should grant preliminary approval of the settlement, authorize the Parties to give notice of the proposed Settlement to Class Members, and schedule a formal fairness hearing. *Id.*; *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982). At the formal fairness hearing, Rule 23 Class Members may be heard and further evidence and argument concerning the fairness, adequacy, and reasonableness of the Settlement may be presented.

Because this is the first stage of the Court's evaluation of the Settlement, the Parties submit that (A) the Rule 23 Class should be provisionally certified for

settlement purposes only; (B) the Settlement should be preliminarily deemed fair, reasonable, and adequate; and (C) notice should be sent out as set forth in the Settlement.

To facilitate the proposed Settlement and for settlement purposes only, Plaintiff respectfully requests that the Court provisionally certify the following Rule 23 Class pursuant to FRCP 23:

> All persons who worked for FLEETCOR, LLC and/or an acquired predecessor company as call center agents in the Lexington, KY facility and/or who worked remotely from home in Kentucky (and not assigned to a particular location) at any time between September 24, 2016 and February 6, 2023, including the Plaintiff and Opt-In Plaintiffs who worked in Lexington, KY and/or who worked remotely from home in Kentucky.

The Parties agree that, for purposes of settlement only, the criteria for certifying the Rule 23 Class under FRCP 23(a) and FRCP(b)(3) is satisfied in this case and the proposed Rule 23 Class should be certified for purposes of settlement.[5]

## B.   The Criteria for Preliminary Settlement Approval Are Satisfied.

Ultimately, the district court must determine that a class action settlement "is 'fair, adequate, and reasonable, and not the product of collusion.'" *George v. Acad. Mortg. Corp. (UT)*, 369 F. Supp. 3d 1356, 1369 (N.D. Ga. 2019) (citing *Leverso v. SouthTrust Bank*, 18 F.3d 1527, 1530 (11th Cir. 1994)). At the preliminary approval

---

[5] In the event the Settlement does not become effective, Defendants reserve all objections to the propriety of class certification and Plaintiff's representation of the putative Rule 23 Class.

stage, "the standards are not so stringent as those applied when the parties seek final approval." *Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 86 (E.D.N.Y 2007). The Eleventh Circuit has identified six factors to be considered in analyzing the fairness, reasonableness, and adequacy of a class settlement under Rule 23(e):

> (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the state of the proceedings and the amount of discovery completed; (4) the probability of the plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of class counsel, class representatives, and the substance and amount of opposition to the settlement.

*Leverso*, 18 F.3d at 1530 n.6; *see also Bennett v. Behring Corp*, 737 F.2d 982, 986 (11th Cir. 1984). A settlement is fair, reasonable, and adequate when "the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *In re Lorazepam & Clorazepate Antitrust Litig.*, 2003 U.S. Dist. LEXIS 12344, at *2 (D.D.C. June 16, 2003) (quoting *Manual for Complex Litigation* (Third) §30.42 (1995)). "In reviewing proposed settlements, courts should [] bear in mind the judicial policy favoring settlements." *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545, 558 (N.D. Ga. 2007).

### 1. Strength of the Claims Compared to the Amount of the Settlement and Allocation of the Settlement Payment

Courts have substantial discretion in determining whether to approve a settlement agreement, but the court should consider the "strong judicial policy favoring settlement as well as . . . the realization that compromise is the essence of

settlement." *See Pinon v. Daimler AG*, 2021 U.S. Dist. LEXIS 249510, at *23 (N.D. Ga. Nov. 30, 2021) (citing *United States v. City of Miami*, 614 F.2d 1322, 1344 (5th Cir. 1980)). A key consideration in evaluating a proposed settlement is the strength of the plaintiff's case as compared to the amount of the defendant's offer. *See Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996). However, "district courts have been admonished 'to refrain from resolving the merits of the controversy or making a precise determination of the parties' respective legal rights.'" *EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985).

Accordingly, in deciding whether to preliminarily approve a settlement, a district court must focus on the general principles of fairness and reasonableness, but not on the substantive law governing the plaintiff's claims. *See Martinez v. Hospitality*, 2017 U.S. Dist. LEXIS 232629, at *3 (N.D. Ga. Jan. 27, 2017); *Luna v. Del Monte Fresh Produce (Se.), Inc.*, 2008 U.S. Dist. LEXIS 21636, at *12 (N.D. Ga. Mar. 19, 2008). The fact that the amount of damages is less than the damages that some members of the class might hope to recover at trial does not present an obstacle to approval of the settlement agreement. *Pinon*, 2021 U.S. Dist. LEXIS 249510, at *26 (citing *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 325 (N.D. Ga. 1993) ("that the proposed settlement amounts to a fraction of potential recovery does not render the proposed settlement inadequate and unfair"); *see also Warran v. City of Tampa*, 693 F. Supp. 1051, 1059 (M.D. Fla. 1988) (noting that

courts have regularly found settlements to be fair even where "[p]laintiffs have not received the optimal relief"); *Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987) (finding adequate a settlement of ten percent of the total sought due to risks and costs of trial).

Based on time and payroll data Defendants produced, Class Counsel estimates that, if the Settlement Class Members were to establish that Defendants were liable to them under the FLSA and Kentucky law for approximately ten (10) minutes of off-the-clock work per shift (which Defendants dispute), they would stand to recover approximately $727,084.61 in unpaid overtime and/or straight-time wages for unpaid time worked, plus an additional $32,858.49 in wages attributable to Defendants' alleged failure to include incentive bonuses and other non-base compensation in the calculation of their overtime rates, for a total of $759,943.11. *See* Brown Decl., ¶ 4. The Net Settlement Fund of $769,629.33 exceeds this amount and will not require Settlement Class Members to undergo the risks and delays of further litigation. A recovery of over ten (10) minutes in a day is outstanding, particularly when compared with other settlements involving similar claims brought by call center workers. *See Turner v. Concentrix Servs. US, Inc*., 2023 U.S. Dist. LEXIS 5117 (W.D. Ark. Jan. 11, 2023) (approving settlement that provided recovery of approximately 35 minutes of off-the-clock work performed per week using the average hourly base rate of pay of all plaintiffs); *Howard v. Web.com Grp. Inc*., 2020

U.S. Dist. LEXIS 256933, at *15 (D. Ariz. Sep. 18, 2020) (approving settlement that provided recovery of approximately 15 to 20 minutes of unpaid start-up time for each week worked); *Quintana v. HealthPlanOne LLC*, 2019 U.S. Dist. LEXIS 124017, at *9 (D. Ariz. July 24, 2019) (approving settlement that provided recovery of about 5 minutes of unpaid work per day, or 25 minutes of unpaid time per week).

This is an excellent result for Settlement Class Members given Defendants' available defenses, which include that Defendants properly paid Settlement Class Members, that the additional compensation was properly included in calculating the overtime rate and/or did not need to be included in the regular rate or may have set-off overtime obligations, that the work allegedly performed off-the-clock was *de minimis* and/or not integral and indispensable to their primary job duties, that liquidated damages should not be awarded, and/or that any recovery should be limited to the FLSA's two-year statute of limitations. *Id.* at ¶ 9. Further, Defendants maintain they have strong defenses against certification and liability on the off-the-clock issue, including records showing, *inter alia,* that employees' time records were corrected to reflect time that was not initially captured in the timekeeping system for various reasons, including pre-shift time spent attempting to log onto the network. *Id.* at ¶ 10. By settling these claims, the Settlement Class Members are assured a significant recovery.

## 2. Complexity, Length, and Expense of Further Litigation

Another factor to be considered by the court is the complexity, length, and expense of litigation that will be spared by the proposed settlement. *See, e.g., Martinez v. Excel Hosp., LLC*, 2017 U.S. Dist. LEXIS 232629, at *2 (N.D. Ga. Jan. 27, 2017). Typically, the inherent nature of FLSA claims involves complex mixed questions of fact and law. *See Barrentine v. Arkansas-Best Freight Sys. Inc.*, 405 U.S. 728, 743 (1981). The instant action not only involves alleged FLSA violations, but also includes alleged state-specific wage and hour violations. *See George v. Acad. Mortg. Corp.*, 369 F. Supp. 3d 1356, 1370 (N.D. Ga. 2019) (finding that the FLSA and state wage and hour law claims and defenses are complex; litigating them would be both difficult and time consuming). Absent settlement, Defendants would continue to vigorously defend the case. As discovery is still in its early stages, significant attorneys' fees and costs would be expended by all Parties in investigating the claims further. Further litigation would certainly result in motions for decertification, contested motions for class certification, dispositive motions, and the possibility of appeals. Additional litigation would increase expenses and would not reduce the risk of litigation to the Rule 23 Class Members. Accordingly, the remaining burden, expenses, and risks for the Rule 23 Class Members would be substantial as continued litigation would require resolution of complex issues at considerable expense. "Courts encourage early settlement of class actions, when

warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 474-75 (S.D.N.Y. 2013).

### 3. At This Preliminary Stage, There is No Opposition to the Settlement

The Plaintiff and proposed class representative Mandy Morrison has signed the Settlement, thus indicating her support, and Class Counsel is unaware of any opposition to the Settlement. *See* Brown Decl. ¶ 12. Thus, this factor supports preliminary approval.

### 4. Opinions of Counsel

Class Counsel Brown, LLC has substantial experience in employment litigation and class action litigation. Brown Decl. ¶ 14 (citing firm resume). Class Counsel had a substantial amount of information to evaluate, negotiate and make well-informed judgments about the adequacy of the Settlement. In Class Counsel's opinions, the Settlement is fair, reasonable, and adequate. Brown Decl. ¶ 13. It is appropriate for the Court to place significant weight on the endorsement of this Settlement by Class Counsel. Class Counsel exercised their experience based on an intimate knowledge of the facts of the case and the legal issues facing the Rule 23 Class, including conducting an independent analysis of the strength and weakness of the claims, the value of the claims and the time costs, as well as the expense of trials and appeals. *Id.* at ¶ 3. Defendants' counsel is similarly experienced in

defending FLSA and state wage and hour cases, including class and collective action cases. When experienced counsel support the settlement, as they do here, their opinions are entitled to considerable weight. *See Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 691 (N.D. Ga. 2001); *see also Warren v. City of Tampa*, 693 F. Supp. 1051, 1054 (M.D. Fla. 1998), *aff'd*, 893 F. 2d 347 (11th Cir. 1998) ("affording great weight to the recommendations of counsel for both parties, given their considerable experience in this type of litigation"). Courts are cautioned to "not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148-49 (8th Cir. 1999) (citation omitted).

### 5. The Settlement Was the Result of Arm's-Length Negotiations Without Any Collusion

The Settlement was the result of adversarial, arm's length negotiations, conducted based on an analysis of payroll and time data Defendants produced for Plaintiff, Opt-In Plaintiffs and some of the Rule 23 Class Members. Brown Decl. ¶ 3. Additionally, the Settlement was achieved through the assistance of a highly experienced Mediator familiar with the matters in the instant action. *Id.* at ¶ 3. In determining whether a settlement was reached absent any collusion between the parties, the Court must examine the negotiating process to determine whether the compromise was the result of arms-length bargaining between the parties. *See Ingram*, 200 F.R.D. at 693 (citing *Domestic Air Transp.*, 148 F.R.D. 297, 313 (N.D.

Ga. 1993)). Indeed, where a settlement is achieved through arms-length negotiations with the assistance of a mediator, such evidence supports the settlement was reached without collusion. *See Pinon*, 2021 U.S. Dist. LEXIS 249510, at \*19 (noting the close participation of former United States District Judge in multiple mediation sessions supports the procedural fairness of the settlement agreement); *see Ingram*, 200 F.R.D. at 693 ("The fact that the entire mediation was conducted under the auspices of . . . a highly experienced mediator, lends further support to the absence of collusion.").

### C.    <u>The Rule 23 Class Should be Provisionally Certified.</u>

Fed. R. Civ. P. 23(e)(1) provides that notice should be given to the class, and hence, preliminary approval should be granted, where the court "will likely be able to" (i) certify the class for settlement purposes, and (ii) finally approve the settlement under Rule 23(e)(2). Fed. R. Civ. P. 23(e)(1)(B)(i)-(ii). "A class may be certified 'solely for purposes of settlement where a settlement is reached before a litigated determination of the class certification issue.'" *Hymes v. Earl Enters. Holdings*, 2021 U.S. Dist. LEXIS 26534, at \*21 (M.D. Fla. Feb. 10, 2021) (quoting *Diakos v. HSS Sys., LLC*, 137 F. Supp. 3d 1300, 1306 (S.D. Fla. 2015)). For a class settlement, the court must find that the prerequisites for class certification under Rule 23(a) and (b) of the FRCP are met. *See id.* (quoting *Daikos*, 137 F. Supp. 3d at 1306). Rule 23(a) is satisfied when the movant shows: (1) the class is so numerous that joinder

of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative party is typical of the claims or defenses of the class; and (4) the representative party will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). A Rule 23(b)(3) class action may be maintained if the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).

### 1. The Proposed Rule 23 Class Satisfies the Elements of Rule 23(a).

#### a. <u>Numerosity</u>

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." There is no mathematical test for determining whether in a particular case the requirement of numerosity has been satisfied; rather, "practicability of joinder depends on many factors, including, for example, the size of the class, ease of identifying its numbers and determining their addresses, facility on making service on them if joined and their geographic dispersion." *Kilgo v. Bowman Transp., Inc.*, 789 F.2d 878 (11th Cir. 1986).

There are approximately 819 Rule 23 Class Members. Although all are located in Kentucky, they could reside anywhere within the state and, given the five-year limitation period, may have moved elsewhere within the United States. As such,

joinder of this many individuals is not practical.  The numerosity requirement is easily met in the instant action. *See Kilgo*, 789 F.2d at 878 (holding that numerosity was met with 31 class members).

### b. <u>Commonality</u>

The test for commonality in questions of law and/or fact is qualitative as opposed to quantitative, meaning that one significant issue common to the class may be sufficient to warrant certification. *See Williams v. Mohawk Indus. Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009) (holding that "commonality requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members'"); *see also In re Checking Account*, 275 F.R.E. at 659 (holding that commonality was satisfied where liability depended on a "class-wide policies and practices"). The requirements of commonality should be liberally construed by the court. *See Freeman v. Motor Convoy, Inc.*, 409 F. Supp. 1100, 1113 (N.D. Ga. 1976).

Here, Rule 23 Class Members share the same questions of law and fact. Rule 23 Class Members are alleged to have performed compensable work off-the-clock before the start of their scheduled shifts, during periods when disconnected and having to reconnect, during the end of their shifts performing specific log-off/shut down procedures, and were subject to Defendants' alleged common policy of failing to include additional compensation in their regular rates of pay for purposes of determining their overtime rate of pay. The theories of liability as to the Rule 23

Class Members arise from the same practices and present basic questions that are common to all members. Accordingly, commonality is satisfied.

### c.  **Typicality**

In order for Rule 23's typicality requirement to be met, representative claims must have "a nexus between the class representative's claims or defenses and the common question of fact or law which unites the class." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (citing Fed. R. Civ. P. 23(a)(3)). Typicality does not require identical claims or defenses, it is satisfied as long as the plaintiff's claim concerns the same policies and practices, arises from the same legal theories, and alleges the same types of harm or entitlement to relief. *Id.*; *see also In re Checking Account*, 274 F.R.D. at 660.

Here, Plaintiff's claims arise from Defendants' alleged practices concerning timekeeping policies and procedures with respect to off-the-clock work, as well as Defendants' alleged failure to include additional paid compensation into her regular rate of pay for purposes of determining her overtime rate of pay, in violation of the FLSA, KRS 337.010 and KRS 337.020. Plaintiff's claims thereby rest on the same legal and factual issues as those of the Rule 23 Class Members. Accordingly, in proving her claims, Plaintiff will necessarily advance the claims of the Rule 23 Class Members. This is the hallmark of typicality. *Kornberg*, 741 F.2d at 1337 (citing Fed. R. Civ. P. 23(a)(3)).

### d.  **Adequacy of Representation**

A representative plaintiff is adequate if (1) he/she is represented by qualified and competent counsel; (2) his/her interests do not conflict with the interests of the proposed class members; and (3) he/she has sufficient personal integrity to fulfill the role of class representative. *See Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987); *see also In re Checking Account*, 275 F.R.D. at 660 (finding the adequacy requirement met where plaintiffs had retained competent counsel and vigorously represented the class members' interest). Plaintiff and her counsel satisfy the adequacy requirement in the instant action.

Plaintiff understands and has accepted the obligations of a class representative and has adequately represented the interests of the Rule 23 Class. She also retained experienced counsel who specialize in wage-and-hour class/collective litigation, with over a decade of such experience. Additionally, Plaintiff has no antagonistic or conflicting interests with the Rule 23 Class Members. Plaintiff is a member of the Rule 23 Class, and both she and the Rule 23 Class seek statutory and compensatory damages for Defendants' allegedly unlawful actions. Considering the claims are identical, there is no potential for conflicting interests to arise between Plaintiff and the Rule 23 Class Members. Accordingly, the adequacy of representation requirement has been met.

### 2. The Proposed Class Satisfies the Elements of Rule 23(b)(3)

#### a. Predominance

If the Rule 23 Class is to be certified under Rule 23(b)(3) for settlement purposes, the common issues of law and fact shared by the Rule 23 Class Members must "predominate" over individual issues. Rule 23(b)(3)'s predominance inquiry focuses on whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997); *Sacred Hearth Health Sys. Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1170 (11th Cir. 2010). The predominance requirements are typically satisfied when there is an essential common factual link between all class members and the defendants for which the law provides a remedy that can be achieved in one adjudication. *In re Checking Account*, 275 F.R.D. at 660.

Here, the predominance requirements are satisfied because the factual and legal issues regarding the Rule 23 Class Members' claims are common. Specifically, the factual and legal issues consist of the following: (1) whether Rule 23 Class Members spent time performing compensable work off-the clock before the start of their scheduled shifts; (2) whether Rule 23 Class Members performed compensable work off-the-clock when reconnecting to necessary programs during periods of technical disconnection; (3) whether Rule 23 Class Members performed compensable work off-the-clock after clocking out at the end of their shift when

performing boot-down procedures; and (4) whether Defendants failed to incorporate Rule 23 Class Members' non-base compensation into their regular rates of pay for purposes of determining their overtime rates. Since these issues are common and determinative of the Rule 23 Class Members' claims, they greatly outweigh the importance of any issues particular to any Rule 23 Class Member.

### b. **Superiority**

Lastly, this Court must determine whether a class action is superior to other methods for the fair and efficient adjudication of this controversy under Fed. R. Civ. P. 23(b)(3); *Klay v. Humana, Inc.*, 382 F.3d 1241, 1269 (11th Cir. 2004). If no alternative method exists, the superiority requirement is satisfied. *Id.*

One factor courts consider in determining superiority is the anticipated recovery for each plaintiff. "Class actions are particularly appropriate where multiple lawsuits would not be justified because of the small amount of money sought by the individual plaintiffs." Advisory Committee's Note to 1996 Amendment to Rule 23.

This case involves multiple claims, many for relatively small individual sums. If Rule 23 Class Members cannot proceed as a class, some – perhaps most – will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to achieve. *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th

Cir.), *cert. denied*, 534 U.S. 973, 122 S. Ct. 395 (2001) ("Class actions . . . may permit the plaintiffs to pool claims which would be uneconomical to litigate individual.") (citing *Phillips Petroleum Co. v. Shutts.*, 472 U.S. 797, 809 (1985)). In such a situation, the superiority requirement is "easily satisfied." *Id.* Plaintiff avers that the same holds true here. Defendants do not oppose such a finding for purposes of settlement approval.

**D.    The Proposed Notice Program Meets the Constitutional Requirements**

The notice and procedure outlined in Section 3 of the Settlement provides proper notice to the members of the Rule 23 Class. "Rule 23(e)(1)(B) requires the Court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise' regardless of whether the class was certified under Rule 23(d)(1), (b)(2), or (b)(3)." *Manual for Complex Lit.* at § 21.312. Many of the same considerations govern both certification and settlement notices. In order to protect the rights of absent class members, a court must require the best notice practicable to class members. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985). The Parties' proposed notice and procedure satisfy the notice requirements. The Notice informs the Rule 23 Class Members of their right to object to the Settlement or to exclude themselves from the Settlement if they would prefer not to be bound by it. In addition, Defendants, through the Settlement Claims Administrator, will cause notice of the proposed settlement to be served pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

### E. Approval Under the FLSA

#### 1. Court Approval of FLSA Settlements

FLSA claims may not be settled without approval of either the Secretary of

Labor or a district court. *See Null v. Mal-Motels, Inc.*, 723 F.3d 1304, 1306 (11th

Cir. 2013); 29 U.S.C. § 216(c). In determining whether a FLSA settlement should

be approved, courts look to the Eleventh Circuit's seminal opinion in *Lynn's Food*

*Stores, Inc. v. U.S.*, 679 F.2d 1350 (11th Cir. 1982). "When employees bring a

private action for back wages under the FLSA, and present to the district court a

proposed settlement, the district court may enter a stipulated judgment after

scrutinizing the settlement for fairness." *Lynn's Food Stores, Inc.*, 679 F.2d at 1353.[6]

A court should approve a fair and reasonable settlement if it was reached as a result

of contested litigation to resolve a *bona fide* dispute between the parties. *Id.* at 1354

("If a settlement in an employee FLSA suit does reflect a reasonable compromise

over issues, such as FLSA coverage or computation of back wages, that are actually

in dispute; we allow the district court to approve the settlement in order to promote

---

[6] The standard for approval of an FLSA settlement is lower than that for a FRCP
Rule 23 settlement because an FLSA settlement does not implicate the same due
process concerns as does a Rule 23 settlement. *See, e.g., Bonilla v. Las Vegas Cigar
Co.*, 61 F. Supp. 2d 1129, 1136 (D. Nev. 1999) ("The §216(b) requirement that
plaintiffs consent to the suit serves essentially the same due process concerns that
certification serves in a Rule 23 action."). Rule 23's fairness factors are, however,
instructive and relevant. *See, e.g. Gamble v. Boyd Gaming Corp.*, 2017 WL 721244
at *4.

the policy of encouraging a settlement of litigation."). Thus, a FLSA settlement should be approved when, as in this case, it is a fair and reasonable compromise reached as a result of contested litigation to resolve *bona fide* disputes between the parties.

## 2. The Proposed Settlement Is the Product of Contested Litigation to Resolve *Bona Fide* Disputes

Plaintiff alleged that Defendants violated the FLSA because they failed to pay her and those similarly situated for all hours worked in excess of forty (40) hours per workweek. Defendants deny Plaintiff's allegations and maintains that the FLSA Class members were compensated appropriately for all hours worked and that Defendants did not require or permit them to work off the clock. If Plaintiff's allegations were all proved and found to be correct, Defendants would be facing the prospect of a significant monetary verdict in favor of Plaintiff, as well as the obligation to pay their own litigation fees and costs and the litigation fees and costs of Plaintiff's counsel.

Here, as noted above, the $769,629.33 Net Settlement Fund is roughly the amount of wages the Settlement Class Members would stand to recover on their FLSA and Kentucky state law claims if they were found to have worked approximately ten (10) minutes off the clock per day. Brown Decl. ¶ 6. This is an excellent recovery given the risks they would face in further litigation, which includes failing to establish that Defendants knew of or permitted any off-the-clock

work, failing to overcome Defendants' showing that their written timekeeping policies mandated reporting of all time worked, Defendants' establishing that the pre-shift work allegedly performed off the clock is *de minimis* and thus not compensable, as well as Defendants' moving for decertification. If Defendants' arguments were accepted and found to be correct, Plaintiff and the Opt-In Plaintiffs face a potential dismissal of their claims and potentially zero recovery. Accordingly, the Court should conclude that *bona fide* disputes between the Parties exist over FLSA liability.

Further, there is no question that the proposed Settlement is the product of contested litigation. In her Complaint, Plaintiff made detailed, factual allegations describing Defendants' allegedly unlawful compensation practices. The Parties conducted formal and informal discovery, including written discovery and a deposition, and factual investigations regarding the issues raised in the Plaintiff's Complaint. Plaintiff's counsel reviewed documents and conducted a thorough, independent investigation. Similarly, Defendants engaged in analysis of their own documents and records to evaluate the veracity of Plaintiff's claims and otherwise conducted their own extensive investigation. In addition to their factual investigations, the Parties also undertook considerable legal analysis of the various issues implicated in this case, including fully analyzing and evaluating the issues

pertaining to collective action certification. Accordingly, the Court should conclude that the proposed Settlement was the product of contested litigation.

### 3. The Settlement Reflects a Fair and Reasonable Resolution of the FLSA Wage Disputes.

The non-exhaustive list of factors courts typically consider in evaluating a proposed settlement for fairness include: (1) the existence of collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of counsel. *See, e.g., Prieto v. Scheeler's Cafe De Marco, Inc.*, 2017 WL 359220, at *1 (M.D. Fla. Jan. 9, 2017) (citing *Dorismond v. Wyndham Vacation Ownership, Inc.*, 2014 WL 2861483, at *2 (M.D. Fla. June 24, 2014)); *Leverso*, 18 F.3d at 1531 n.6. Here, the Parties agree that application of these factors confirms that their proposed Settlement constitutes a fair and reasonable compromise of their *bona fide* disputes.

The Settlement in this lawsuit resulted only after significant negotiations with a skilled Mediator. Prior to the Settlement, the Parties, who at all times have been fully and adequately represented by counsel, had full opportunity to analyze the pertinent factual and legal issues and assess the strengths and weaknesses of the claims and defenses at issue. The arms-length negotiations by experienced counsel before a qualified Mediator ultimately allowed the Parties to bridge the significant

gap between the Parties' settlement positions and obtain the resolution described above and set forth in the attached Settlement. Under these circumstances, a presumption of fairness should attach to the proposed Settlement. *See Lynn's Food Stores, Inc.*, 679 F.2d at 1354 (recognizing that courts rely on the adversary nature of a litigated FLSA case resulting in settlement as indicia of fairness).

Moreover, the Settlement provides meaningful relief to Plaintiff and the Opt-In Plaintiffs and eliminates the inherent risks both sides would bear if this complex litigation continued to resolution on the merits. Many complex issues of fact and law remain unanswered and would have to be resolved at, or before, trial. Any trial would be lengthy, costly, and complex, likely involving a veritable "battle of experts" opining on technological issues and complicated mathematical formulas used to determine whether the amount of any hours worked yielded violations of the FLSA's overtime requirements for Plaintiff and the Opt-In Plaintiffs during each week of employment during the relevant time period. Regardless of the outcome at trial, post-judgment appeals would be inevitable. Accordingly, the complexity and prospective expense and duration of litigation weigh in favor of approving the Settlement.

As outlined above, the Parties disagree about the merits of Plaintiff's claims and the viability of Defendants' various defenses. If the litigation had continued, Plaintiff would have faced many obstacles, including defeating a motion for decertification. Additionally, although the range of potential recovery at trial could

possibly have been greater, it is equally possible the potential recovery would have been less. Consequently, this Settlement provides a certainty of result and value now, as opposed to years from now. Thus, the Settlement avoids expenditures of resources for all Parties and the Court, and provides "significant benefit that [plaintiffs] would not receive if the case proceeded – certain and prompt relief." *Barbosa v. Cargill Meat Sol. Corp.*, 297 F.R.D. 431, 446 (E.D. Cal. 2013).

Finally, the proposed Settlement distribution to Plaintiff and each Opt-In Plaintiff is fair and equitable. The "Net Settlement Fund" will be calculated by deducting from the Gross Settlement Fund (1) Court-approved attorney fees (not to exceed 1/3 of the Gross Settlement Fund); (2) Court-approved litigation costs and expenses (not to exceed $27,000); (3) costs of the Settlement Claims Administrator; and (4) fees and costs for the Mediator. The FLSA Settlement Fund amounts to twenty percent (20%) of the Net Settlement Fund and will be distributed on a pro-rata basis based on the number of workweeks Plaintiff and the Opt-In Plaintiffs were employed during the applicable statute of limitations period. Plaintiff and the Opt-In Plaintiffs will receive two (2) checks, one check for unpaid wages and one check for liquidated damages.

**F.**    <u>**Class Counsel Should Be Appointed.**</u>

Plaintiff respectfully submits that Jason T. Brown, Nicholas R. Conlon, and Edmund C. Celiesius of Brown, LLC in Jersey City, New Jersey, and Roger Orlando of The Orlando Firm, P.C. should be appointed as Class Counsel.

In determining whether to appoint class counsel under Fed. R. Civ. P. 23(g), the Court must consider the following factors: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv).

As indicated in the firm resume included as Exhibit 1 to the Declaration of Jason T. Brown, Brown, LLC (the "Firm") is led by Jason T. Brown, who previously worked as a Legal Advisor and Special Agent for the FBI and who has been practicing law for over twenty-five (25) years. The Firm has an extensive track record of serving as collective and class counsel in wage-and-hour settlements like the present one, including settlements in several other call-center cases that have been approved in other districts.

Class Counsel's efforts in this action have included investigating the claims of Plaintiff and dozens of FLSA Class and Rule 23 Class Members by interviewing

them regarding their employment and potential wage-and-hour claims and reviewing their documents, investigating the Defendants, drafting and filing the Complaint, exchanging documents and information with Defendants, conducting written discovery and g taking the deposition of Plaintiff's supervisor, reviewing pay and timekeeping data received from Defendants and using same to create a global damages model, participating in mediation, negotiating the settlement term sheet, and participating in the drafting of the Settlement, Notice, Verification Form, and approval motion. To date, Plaintiff's counsel have spent over 667.8 hours on this case and expect to spend significantly more time attending the preliminary approval hearing (if any), working with the Settlement Claims Administrator to ensure the Notice is provided in a timely manner, handling inquiries from FLSA Class and Rule 23 Class members, preparing the motion for final approval of the Settlement and the motion for attorneys' fees and costs, attending the final approval hearing, and working with the Settlement Claims Administrator to ensure that FLSA Class and Rule 23 Class members receive their settlement checks. The work that Brown, LLC and The Orlando Firm, P.C. have performed thus far in litigating and settling this case demonstrates their commitment to the Settlement Class Members.

## V.   SCHEDULING A FINAL APPROVAL HEARING IS APPROPRIATE.

The Parties request that the Court schedule a Fairness Hearing to hear all evidence and argument necessary to determine whether the Settlement should be

finally approved, to consider any objections thereto, and to determine whether the proposed attorneys' fees, costs, and general release payment should be approved. To allow time for the Notice procedure to be administered, the Parties suggest that the final Fairness Hearing be scheduled no earlier than approximately 110 days from the date of preliminary approval.

## VI.    **CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Preliminary Approval should be granted.


Dated: March 27, 2023                                Respectfully submitted,

                                                     */s/ Jason Brown*
                                                     Jason T. Brown (PHV)
                                                     Nicholas Conlon (PHV)
                                                     Edmund C. Celiesius (PHV)
                                                     **BROWN, LLC**
                                                     111 Town Square Place, Suite 400
                                                     Jersey City, NJ 07310
                                                     TEL: (877) 561-0000
                                                     FAX: (855) 582-5297
                                                     jtb@jtblawgroup.com
                                                     nicholasconlon@jtblawgroup.com
                                                     ed.celiesius@jtblawgroup.com

                                                     *Lead Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 27, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system. Parties may access this filing through the Court's System.

*/s/ Jason Brown*
Jason T. Brown (PHV)

## **CERTIFICATE OF COMPLIANCE**

Pursuant to L.R. 7.1, the undersigned certifies that this motion complies with the font and point selections permitted by L.R. 5.1. This document was prepared on a computer using the Times New Roman font (14 point).

*/s/ Jason Brown*
Jason T. Brown (PHV)