IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| **MANDY MORRISON,** individually, and on behalf of all others similarly situated | : : : | |
| Plaintiff, | : : | |
| v. | : : | Civil Action No.: 21-03950-TWT |
| **FLEETCOR TECHNOLOGIES OPERATING COMPANY, LLC, and FLEETCOR TECHNOLOGIES, INC.** | : : : : | |
| Defendants. | : | |

**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF COLLECTIVE AND CLASS ACTION SETTLEMENT AND APPROVAL OF ATTORNEYS' FEES, LITIGATION AND <u>ADMINISTRATIVE COSTS AND INCORPORATED BRIEF IN SUPPORT</u>**

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................ 1

A.   Background of the Lawsuit and Plaintiff's Claims .................................. 2

B.   Summary of the Settlement Terms ....................................................... 3

C.   The Notice Process ............................................................................. 3

II.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, ADEQUATE, AND SHOULD BE APPROVED BY THE COURT. ................................. 5

   A.    The Proposed Settlement Is a Fair Compromise in Light of The Strength of Plaintiff's Claims……………………………………………………………………6

B.   Litigation Through Trial Would Be Complex, Costly, and Long. ........................ 9

C.   The Reaction of the Class Has Been Positive. ........................................... 10

D.   The Agreement Was Negotiated at Arm's Length by and Is Endorsed by Competent Counsel for Both Parties ........................................................ 11

E.   The Stage of Proceedings and Amount of Discovery Completed. ...................... 13

F.   Range of Possible Recovery and Range at Which Settlement is Fair. .............. 13

G.   The Remaining Rule 23(e)(2) Factors Support Approval. ........................... 14

H.   Approval of the FLSA Settlement Is Appropriate Under the FLSA. ................. 15

III.  THE COURT SHOULD CERTIFY THE CLASS FOR SETTLEMENT PURPOSES. ....................................................................................... 16

IV.   THE ADDITIONAL CONSIDERATION IN EXCHANGE FOR THE GENERAL RELEASE SHOULD BE APPROVED. ...................................... 19

V.    ATTORNEYS' FEES AND COSTS SHOULD BE APPROVED AS FAIR AND REASONABLE. ............................................................................ 22

   A.    The Law Awards Class Counsel Fees From the Common Fund Created Through Their Efforts……………………………………………………………….…23

B.   Application of the *Camden I* Factors Supports the Requested Fee. ................... 24

  1.   Achieving the Settlement Required Substantial Time and Labor......25

2.   The Issues Involved Were Novel and Difficult, and Required the Skill of Highly Talented Attorneys. ...................................................................................... 27

3.   Class Counsel Achieved an Excellent Result. ........................................... 28

4.   The Claims Presented Serious Risk...................................................... 29

5.   Class Counsel Assumed Considerable Risk to Pursue This Action on a Pure Contingency Basis, and Were Precluded from Other Employment as a Result. ..... 30

6.   The Requested Fee Comports with Fees Awarded in Similar Cases. ................. 32

7.   The Remaining *Camden I* Factors Also Favor Approving the Requested Fee. 34

C.   The Expense Request Is Appropriate.......................................................... 35

D.   The Settlement Administration Fees Should Be Awarded. ................................ 35

VI.  CONCLUSION ................................................................................ 35

Plaintiff, Mandy Morrison ("Plaintiff"), on behalf of herself and all others similarly situated, and without objection from Defendants FLEETCOR Technologies Operating Company, LLC ("FLEETCOR, LLC") and FLEETCOR Technologies, Inc. (collectively, "Defendants") (Plaintiff and Defendants collectively referred to as, the "Parties"), respectfully submits the Parties' proposed $1,250,000 Settlement for the Court's final approval.

## I.    **INTRODUCTION**

Pursuant to the Court's Preliminary Approval Order, [ECF No. 79] the Parties disseminated notice of the settlement to the 720 members of the Rule 23 Class.[1] Of the 720 Rule 23 Class Members, 139 persons (19.31%) have elected to participate in the Settlement, either by previously submitting consent forms (in the case of Opt-in Plaintiffs who worked in Kentucky), and/or by submitting Verification Forms. Only one Rule 23 Class Member opted-out and no Rule 23 Class Member objected. If the Settlement is approved, a total of 264 Authorized Claimants will receive at least $344,652.38 from the Net Settlement Fund.

---

[1] Any capitalized terms not defined herein have the meaning ascribed to them in the Collective and Class Action Settlement Agreement and Release (the "Settlement"), which was attached as Exhibit 1 to the Plaintiff's Unopposed Motion for Preliminary Approval of Collective and Class Action Settlement and for Certification of Rule 23 Class for Settlement Purposes Only ("Unopposed Motion for Preliminary Approval") [ECF No. 78-1].

The Parties now seek an order: (1) approving as fair and adequate the class-wide $1.25 million settlement of this action as set forth in the Settlement previously filed as ECF No. 78-1; (2) finally certifying this case as a Rule 23 class action for settlement purposes; and (3) approving the additional compensation ($13,000) in exchange for Plaintiff's general release of claims, Class Counsel's attorneys' fees ($416,666.67) and litigation costs ($27,000.00), and Simpluris, Inc.'s ("Simpluris") settlement administration costs ($13,177.00).

## A. Background of the Lawsuit and Plaintiff's Claims

On September 24, 2021, Plaintiff, who worked for FLEETCOR, LLC and/or an acquired predecessor company in Lexington, Kentucky, filed a class and collective action lawsuit. Plaintiff sought to represent an FLSA collective consisting of hourly-paid, non-exempt call center agents. Plaintiff also alleged putative Rule 23 class action claims under KRS 337.010 and KRS 337.020.

On April 19, 2022, after a stipulation by the Parties, the putative collective action was conditionally certified pursuant to § 216(b) of the FLSA [ECF No. 41]. Upon conclusion of the 60-day opt-in period, 169 individuals (in addition to the Plaintiff) chose to opt-in to this action, four (4) of whom subsequently filed notices to withdraw their consent. On February 6, 2023, the Parties participated in a full-day mediation overseen by Mediator Parks and, after several more days of negotiations

aided by Mediator Parks, reached a settlement in principal to resolve all matters pertaining to, arising from, and associated with this action. *See* Exhibit 2, Declaration of Edmund C. Celiesius in Support of Plaintiff's Final Approval Motion ("Celiesius Decl."), ¶ 6. The Court preliminarily approved the Parties' settlement agreement on March 30, 2023 [ECF No. 79].

### B. Summary of the Settlement Terms

The terms of the Parties' Settlement detailed in Plaintiff's Unopposed Motion for Preliminary Approval [ECF No. 78] remain and are incorporated herein.[2]

### C. The Notice Process

Pursuant to the Court's Preliminary Approval Order, the Claims Administrator Simpluris: (i) sent the Court-approved Notice Packets to the 720 Rule 23 Class Members on May 12, 2023; and (ii) mailed a notice to the Attorney General of the United States, the Attorney General of the State of Kentucky, and the Attorney

---

[2] There was only one (1) minor change to a term in the Settlement in an effort to expedite payment of Mediator Parks' fees and costs. Pursuant to Mediator Parks' request, the Parties agreed that Defendants would pay the mediation fees and costs directly to Mediator Parks such that Mediator Parks would not have to wait until completion of the time periods set forth in the Settlement, including funding of the Final Settlement Amount and distribution by Simpluris, as contemplated by Section 6.1(F) of the Settlement. The Final Settlement Amount to be funded by Defendants will simply be reduced by the $10,350.00 Defendants paid to Mediator Parks. In the event this Court does not issue an order finally approving the Settlement, Class Counsel assured Defendants that they would remit one-half (1/2) of the mediation fees and costs to Defendants.

General of each other state where Class Members reside according to Defendants' records in compliance with the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715. *See* **Exhibit 1**, Declaration of Mary Butler Regarding Notice and Settlement Administration ("ButlerDecl."), ¶¶ 6-8, 10. The Notice Packets sent by Simpluris to the 720 Rule 23 Class Members advised recipients that any requests for exclusion or objections would need to be postmarked by June 26, 2023. *Id.* at Exhibit A.

As of this date, Simpluris has received 122 timely, valid Verification Forms, only one (1) Request for Exclusion, and no objections. *Id.* at ¶¶ 11-14. In addition to the 122 Class Members who submitted Verification Forms, seventeen (17) Opt-in Plaintiffs who already qualify as Class Members will also receive their shares of the Kentucky State Law Settlement Fund, if the settlement is approved. *Id.* at ¶ 14. In total, these 139 Class Members will receive at least $190,691.11 from the Kentucky State Law Settlement Fund. *Id.* at ¶ 16. In addition, the 159 Opt-in Plaintiffs will receive the entirety of the $153,961.27 FLSA Settlement Fund. *Id.* at ¶ 15.[3]

---

[3] Of the 165 Opt-in Plaintiffs who have filed consent forms, six (6) persons are not eligible to participate in the Settlement because they either did not work any weeks for FLEETCOR. LLC and/or an acquired predecessor company, or because their claims are barred by releases. This brings the total number of eligible Opt-in Plaintiffs to 159, including the Named Plaintiff.

## II.  THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, ADEQUATE, AND SHOULD BE APPROVED BY THE COURT.

Rule 23(e) requires court approval for a class action settlement so that it is procedurally and substantively fair, reasonable, and adequate. Fed. R. Civ. P. 23(e); *see George v. Acad. Mrtg. Corp. (UT)*, 369 F. Supp. 3d 1356, 1369 (N.D. Ga. 2019) (citing *Leverso v. SouthTrust Bank*, 18 F.3d 1527, 1530 (11th Cir. 1994)). In general, settlement of class actions is favored as a matter of "strong judicial policy." *See Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 658 (E.D. Cal. 2008) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).

In determining whether a proposed settlement is fair, reasonable, and adequate, courts are to consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

The Eleventh Circuit has identified six (6) factors to be considered in analyzing the fairness, reasonableness, and adequacy of a class settlement under Rule 23(e):

> (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the state of the proceedings and the amount of discovery completed; (4) the probability of the plaintiffs' success on the merits; (5) the range of possible recover; and (6) the opinions of class counsel, class representatives, and the substance and amount of opposition to the settlement.

*Leverso*, 18 F.3d at 1530 n.6; *see also Bennett v. Behring Corp*, 737 F.3d 982, 986 (11th Cir. 1984). A settlement is fair, reasonable, and adequate when "the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *In re Lorazepam & Clorazepate Antitrust Litig.*, 2003 U.S. Dist. LEXIS 12344, at *2 (D.D.C. June 16, 2003) (quoting *Manual for Complex Litigation* (Third) § 30.42 (1995)).

## A. The Proposed Settlement Is a Fair Compromise in Light of The Strength of Plaintiff's Claims.

The Parties have agreed to settle this case for a maximum amount of $1,250,000.00. This represents significant value to hundreds of call center agents, especially given the attendant risks of litigation. Weighing the benefits of this Settlement against the available evidence and the risks associated with proceeding in the litigation, the settlement amount is reasonable.

6

Based on time and payroll data Defendants produced, Class Counsel estimates that, if the Settlement Class Members were to establish that Defendants were liable to them under the FLSA and Kentucky law for approximately ten (10) minutes of off-the-clock work per shift (which Defendants dispute), they would stand to recover approximately $727,084.61 in unpaid overtime and/or straight-time wages for unpaid work, plus an additional $32,858.49 in wages attributable to Defendants' alleged failure to include incentive bonuses and other non-base compensation in the calculation of their overtime rates, for a total of $759,943.11. *See* Celiesius Decl., ¶ 5. The Net Settlement Fund of $769,806.33 exceeds this amount and will not require Settlement Class Members to undergo the risks and delays of further litigation. A recovery of over ten (10) minutes in a day is outstanding, particularly when compared with other settlements involving similar claims brought by call center workers. *See Turner v. Concentrix Servs. US, Inc.*, 2023 U.S. Dist. LEXIS 5117 (W.D. Ark. Jan. 11, 2023) (approving settlement that provided recovery of approximately 35 minutes of off-the-clock work performed per week using the average hourly base rate of pay of all plaintiffs); *Howard v. Web.com Grp. Inc.*, 2020 U.S. Dist. LEXIS 256933, at *15 (D. Ariz. Sep. 18, 2020) (approving settlement that provided recovery of approximately 15 to 20 minutes of unpaid start-up time for each week worked); *Quintana v. HealthPlanOne LLC*, 2019 U.S. Dist. LEXIS

124017, at *9 (D. Ariz. July 24, 2019) (approving settlement that provided recovery of about 5 minutes of unpaid work per day, or 25 minutes of unpaid time per week). The Settlement is all-the-more exceptional given that the estimated recovery was, in many instances, calculated based on the Settlement Class Members' dates of employment, which undoubtedly included many workweeks in which the Settlement Class Members did not perform any work due to vacations, illnesses, holidays, and other reasons.

This is also an excellent result for Settlement Class Members given Defendants' available defenses, which include that Defendants properly paid Settlement Class Members, that the additional compensation was properly included in calculating the overtime rate and/or did not need to be included in the regular rate or may have set-off overtime obligations, that the work allegedly performed off-the-clock was *de minimis* and/or not integral and indispensable to their primary job duties, that liquidated damages should not be awarded, and/or that any recovery should be limited to the FLSA's two-year statute of limitations. *See* Celiesius Decl., ¶ 10. Further, Defendants maintain they have strong defenses against certification and liability on the off-the-clock issue, including records showing, *inter alia*, instances wherein employees' time records were corrected to reflect time that was not initially captured in the timekeeping system for various reasons, including pre-

8

shift time spent attempting to log onto the network. *Id.* at ¶ 11. By settling these claims, the Settlement Class Members are assured a significant recovery.

**B. Litigation Through Trial Would Be Complex, Costly, and Long.**

The second factor to be considered by a court is the complexity, length, and expense of litigation that will be spared by the proposed settlement. *See, e.g., Martinez v. Hospitality*, 2017 U.S. Dist. LEXIS 232629, at *2 (N.D. Ga. Jan. 27, 2017). Typically, the inherent nature of FLSA claims involves complex mixed questions of fact and law. *See Barrentine v. Arkansas-Best Freight Sys. Inc.*, 405 U.S. 728, 743 (1981). The instant action not only involves alleged FLSA violations, but also includes alleged wage and hour violations under Kentucky law. *George*, 369 F. Supp. 3d at 1370 (finding that the FLSA and state wage and hour law claims and defenses are complex; litigating them would be both difficult and time consuming).

Absent settlement, Defendants would continue to vigorously defend the case. As discovery is still in its early stages, significant attorneys' fees and costs would be expended by all Parties in investigating the claims further. Further litigation would certainly result in motions for decertification, contested motions for class certification, dispositive motions, and the possibility of appeals. Additional litigation would increase expenses and would not reduce the risk of litigation to the Rule 23

9

Class Members. Accordingly, the remaining burden, expenses, and risks for the Rule 23 Class Members would be substantial as continued litigation would require resolution of complex issues at considerable expense. Indeed, "Courts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 474-75 (S.D.N.Y. 2013).

### C. The Reaction of the Class Has Been Positive.

The Class Members have reacted positively to the Settlement. Of the 720 Rule 23 Class Members, 139 persons (19.31%) have elected to participate in the settlement, either by previously submitting consent forms (in the case of Opt-in Plaintiffs who worked in Kentucky), and/or by submitting Verification Forms. *See Cook v. Gov't Emples. Ins. Co.*, 2020 U.S. Dist. LEXIS 111956, at *23 (M.D. Fla. June 22, 2020) (noting that a claims rate of approximately 25.3% is significant and exceeds the claims rate in the overwhelming majority of similarly-constructed settlements); *Poertner v. Gillette Co.*, 618 Fed. Appx. 624, (11th Cir. 2015) (confirming approval of class settlement with less than 1% claims rate); *Hamilton v. SunTrust Mortg. Inc.*, 2014 U.S. Dist. LEXIS 154762, at *14 (N.D. Fla. Oct. 24, 2014) (noting that even a low claims rate for claims made structure does not impact

the fairness, reasonableness, or adequacy of proposed settlement); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1337 (S.D. Fla. 2007) (approval of settlement when 1.1% of class members returned claims forms); *Moore v. Verizon Commc'n Inc.*, 2013 U.S. Dist. LEXIS 170027, at *8 (N.D. Cal. Aug. 28, 2013) (granting final approval of class action settlement with 3% claims rate).

Further, none of the Class Members objected to the Settlement. In addition, although the notice process made it clear that each Settlement Class Member was free to exclude themselves from the Settlement so they could pursue their claims individually, only one (1) Class Member has done so. This factor strongly militates in favor of approving the settlement.

### D. The Agreement Was Negotiated at Arm's Length by and Is Endorsed by Competent Counsel for Both Parties.

In determining whether a settlement was reached absent any fraud or collusion, courts examine the negotiating process to determine whether the compromise was the result of arms-length bargaining between the parties. *See Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) (citing *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 313 (N.D. Ga. 1993)). Where a settlement is achieved through arms-length negotiations with the assistance of a mediator, such evidence supports the settlement was reached without collusion. *See Pinon v. Daimler AG*, 2021 U.S. Dist. LEXIS 249510, at *19 (N.D. Ga. Nov. 30,

2021) (noting the close participation of former United States District Judge in multiple mediation sessions supports the procedural fairness of the settlement agreement); *see Ingram*, 200 F.R.D. at 693 ("The fact that the entire mediation was conducted under the auspices of . . . a highly experienced mediator, lends further support to the absence of collusion.").

Counsel for both sides are experienced in employment litigation. Class Counsel, Brown, LLC, has substantial experience in employment litigation and class action litigation. *See* Celiesius Decl., ¶¶ 15-19 (citing firm resume). Defendants' counsel is also experienced and accomplished in the labor and employment law practice. Counsel for the Parties believe this settlement is fair and reasonable. This factor weighs heavily in favor of final approval. *See Ingram*, 200 F.R.D. at 691; *see also Warren*, 693 F. Supp. at 1060 (M.D. Fla. 1998), *aff'd*, 893 F.2d 347 (11th Cir. 1988) ("affording great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation"); *see also Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148-49 (8th Cir. 1999) (noting that courts are cautioned to "not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel").

**E.  The Stage of Proceedings and Amount of Discovery Completed.**

This case was heavily contested for nearly two (2) years. In May 2022, a Court-approved notice was sent to all putative collective members, which resulted in a total of 159 Opt-in Plaintiffs in the case, many of whom provided counsel with information that bore significantly on their evaluation of the case's strengths and weaknesses. *See* Celiesius Decl., ¶¶ 25-26. Plaintiff served Defendants with written discovery requests and conducted the deposition of Plaintiff's supervisor. *Id.* In advance of the mediation, the Parties also engaged in informal discovery, including the exchange of additional documents and data. In preparation for mediation, Plaintiff's counsel reviewed, analyzed, and synthesized the payroll data supplied by Defendants for Plaintiff, Opt-In Plaintiffs, and some of the Rule 23 Class Members in order to create a damage model for purposes of the mediation. *Id.*, ¶¶ 3-5. A detailed damage Excel spreadsheet was prepared and reviewed throughout the mediation which allowed the Plaintiff to negotiate based on an objective understanding of the potential damages the class stood to recover. *Id.*

**F.  Range of Possible Recovery and Range at Which Settlement is Fair.**

The relief sought in the settlement is reasonable and within the range of remedies available under the FLSA and Kentucky law. As noted above, the $769,806.33 Net Settlement Fund exceeds the $759,943.11 that Plaintiff estimates

the Opt-in Plaintiffs and Rule 23 Class Members would stand to recover in wages if they prevailed on their overtime rate claims and recovered ten (10) minutes per day of off-the-clock work. This compares favorably with amounts received by employees in similar lawsuits. *See, supra,* II.A.

**G. The Remaining Rule 23(e)(2) Factors Support Approval.**

Based on the foregoing, the Court can readily conclude that final approval is appropriate under Rule 23I(2)(A), (B), and (C)(i).

In addition, final approval is appropriate under Rule 23(e)(2)(C)(ii) because the proposed method of distributing relief to the class, *i.e.,* mailing settlement checks to their last-known addresses as reported on their Verification Forms and/or to Class Counsel, is effective. Likewise, the claims process was not burdensome, as evidenced by the submission of 122 Verification Forms. Rule 23(e)(2)(C)(iii) is satisfied because the proposed attorneys' fees are reasonable (as argued herein), and to the extent approved, will be paid at the same time payments are mailed to Authorized Claimants. *Settlement,* §§ 6.1(C), (E). Aside from the Settlement and exhibits thereto, there are no other agreements between the parties, for purposes of Rule 23(e)(2)(C)(iv).

Finally, the Settlement treats the Opt-in Plaintiffs and Rule 23 Class Members equitably, for purposes of 23(e)(2)(D), by allocating the Net Settlement Fund

according to the potential damages owed to the Opt-in Plaintiffs and Rule 23 Class Members, respectively, based on the number of weeks each individual was employed by FLEETCOR, LLC and/or an acquired predecessor company. *Settlement,* §§ 6.2(B), (C).

**H. Approval of the FLSA Settlement Is Appropriate Under the FLSA.**

Plaintiff also requests that the Court finally approve the settlement of the FLSA claims of the 159 Opt-in Plaintiffs, most of whom joined the case after conditional certification was granted, [ECF No. 41] and a Court-approved notice was sent. Unlike the procedure under Rule 23, collective members must affirmatively opt into the litigation in order to join it. *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 84-85 (S.D.N.Y. 2001). Because, under the FLSA, "parties may elect to opt in but failure to do so does not prevent them from bringing their own suits at a later date," FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989). Accordingly, the higher standard for approval of a class action under Rule 23 does not apply to an FLSA settlement.

Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See Lynn's Food Stores, Inc. v.*

15

*U.S.*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982). Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Id.* at 1353-54. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Id.* at 1354.

Here, the Settlement was the result of extensive litigation, mediation, and arms-length negotiations involving vigorous back and forth with the assistance of a well-respected and experienced class and collective action mediator. *See* Celiesius Decl., ¶¶ 3-6. During the litigation, the Named Plaintiff, Opt-in Plaintiffs, and Defendants were represented by counsel experienced in wage and hour law. Because the Settlement resolves a clear and actual dispute waged in contested litigation and was resolved through arms-length negotiations, it should be approved.

## III.   **THE COURT SHOULD CERTIFY THE CLASS FOR SETTLEMENT PURPOSES.**

The Court's Preliminary Approval Order [ECF No. 79] preliminarily certified the Settlement Class. Plaintiff's arguments in support of class certification were detailed in her Motion for Preliminary Approval [ECF No. 78, at 19-26]. Those arguments remain and Plaintiff incorporates them herein. The Court should certify this case as a Rule 23 class for settlement purposes. *See George*, 369 F. Supp. 3d at

1373 (certifying settlement class and collective at final approval stage for same reasons that supported preliminary certification and approval).

Further, the Court should confirm its prior appointment of Brown, LLC and The Orlando Firm, LLC as Class Counsel [ECF No. 79-1, ¶ 6]. In determining whether to appoint class counsel under Fed. R. Civ. P. 23(g), the Court must consider the following factors: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv).

All of these factors support Class Counsel's adequacy. Class Counsel has thoroughly investigated the potential claims at issue in this action by, among other things, identifying the various theories of liability asserted in the complaint, conducting thorough interviews with the Named Plaintiff and dozens of Opt-in Plaintiffs, propounding written discovery and deposing the Named Plaintiff's supervisor, reviewing and analyzing documents, and preparing a damage model based on the Opt-in Plaintiffs' and Rule 23 Class Members' payroll data. *See* Celiesius Decl., ¶¶ 3-6. Class Counsel Brown, LLC has extensive experience handling wage-and-hour collective and class actions, and has been appointed class

17

counsel under Rule 23 in over ten (10) other federal actions, several of which involved wage-and-hour claims asserted by call center agents and/or under Kentucky law. *Id*. ¶¶ 17-18. Further, Brown, LLC has committed significant resources towards its representation of the class, including by billing over 735 hours and advancing over $27,000 in costs on a wholly contingent basis. *Id*. ¶¶ 21-24.

Although Brown, LLC and its attorneys have been found adequate class counsel under Rule 23 by numerous courts around the country, on July 5th, 2023, a Magistrate Judge in the United States District Court for the Western District of New York in the case *Claude Robertson, et al. v. Trinity Packaging Corp*., Case No. 1:19-cv-00659-JLS-JJM, ECF No. 106, issued an order pursuant to the limited consent of the parties to that case under 28 U.S.C. §636(c), denying a motion for final approval of a collective and class action settlement based on adequacy concerns related to alleged conduct in a separate case before the same Judge, in which the court believed counsel had a duty to move for collective and class certification instead of settling the matter individually.[4]

The *Trinity* case has no impact on the instant case, which involves completely different parties, claims, and putative collective and class members, and, more

---

[4] Brown, LLC and its attorneys respectfully disagree with the reasoning and conclusions in the *Trinity* decision and have recently petitioned the Second Circuit for permission to appeal the decision under Rule 23(f).

significantly, in which the Parties have stipulated to conditional certification and Plaintiff has moved for class certification for settlement for settlement purposes. *See Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323-24 (11th Cir. 2008) ("[O]nly the most egregious misconduct on the part of plaintiffs' lawyer could ever arguably justify denial of class status.") (quoting *Halverson v. Convenient Food Mart, Inc.*, 458 F.2d 927, 932 (7th Cir. 1972)). Nevertheless, to the extent the Court has any concerns regarding adequacy in the instant matter, Brown, LLC respectfully requests the opportunity to brief the matter more fully, and are, of course, prepared to answer any questions from the Court, including at the final fairness hearing. Mr. Brown has served as a lawyer since 1996, served the country as a Special Agent and Legal Advisor with the Federal Bureau of Investigation ("FBI") and has had an exemplary career. There is no factor present in the instant case that would impinge on adequacy and, in fact, the already-discussed factors favor a finding of adequacy.

## IV.  **THE ADDITIONAL CONSIDERATION IN EXCHANGE FOR THE GENERAL RELEASE SHOULD BE APPROVED.**

The Court should approve the additional compensation paid to Named Plaintiff in exchange for her general release of claims. Notably, the additional compensation in exchange for Named Plaintiff's general release of claims is in addition to, and apart from, any portion of the FLSA Settlement Fund and Rule 23 Settlement Fund to which she may be eligible to receive. *Settlement*, § 6.5.

Plaintiff is mindful of the Eleventh Circuit's holding in *Johnson v. NPAS Solutions, LLC*, where the court invalidated a proposed service award in a class action. *See* 975 F.3d 1244, 1255-61 (11th Cir. 2020). However, the additional compensation provided to Named Plaintiff is not a service award. Rather, it is a mutual exchange between Named Plaintiff and Defendants for Named Plaintiff's general release of claims, which confers benefits to each party and is distinguishable to issues considered in *Johnson*. Specifically, Named Plaintiff is receiving compensation to waive additional claims beyond her wage-and-hour claims, and Defendants receive the benefit of abstaining liability for other claims Plaintiff may have against Defendants. Further, the additional compensation is money provided by Defendants apart from the Gross Settlement Fund. *Settlement*, § 6.5.

Indeed, courts have easily distinguished *Johnson* in finding that additional consideration is warranted for a plaintiff who releases additional claims. *See e.g. Broughton v. Payroll Made Easy, Inc.*, 2021 U.S. Dist. LEXIS 139514, at *8 & n.5, 21-22 (M.D. Fla. July 27, 2021) (granting preliminary approval of settlement in which the named plaintiff would "receive $5,000.00 as consideration for his agreement to execute a general release," even though the settlement agreement contained references to a "service award"); *see also Tweedie v. Waste Pro of Fla., Inc.*, 2021 U.S. Dist. LEXIS 85018, at *18 n.2 (M.D. Fla. May 4, 2021), *rept. and*

*rec. adopted*, 2021 U.S. Dist. LEXIS 146680 (M.D. Fla. Aug. 5, 2021) (recommending approval of "the $7,500 payment to Tweedie as consideration for execution of the General Release").

Here, the facts are clearly distinguishable from those in *Johnson*. First, Named Plaintiff is not being provided a service award for bringing a lawsuit or providing her time participating in this lawsuit. Rather, Named Plaintiff is providing a release beyond that of the Class and Collective members in the form of a general release of claims, in exchange for additional consideration for such release. Second, the additional consideration exchanged for Named Plaintiff's general release is paid in addition to any portion of the FLSA Settlement Fund and Rule 23 Settlement Fund to which she may be eligible to receive.[5]

---

[5] *See Garcia v. Amazon.com, Inc.*, 2023 U.S. Dist. LEXIS 77577 (M.D. Fla. May 1, 2023) (approving FLSA collective settlement agreement wherein named plaintiff received additional compensation in exchange for general release); *William S. v. Progressive Select Ins. Co.*, 2023 U.S. Dist. LEXIS 58227, at *6-7 (S.D. Fla. Mar. 31, 2023) (granting final approval, including "service award" of $10,000 to each of the Class Representatives); *Junior v. Infinity Ins. Co.*, 2022 U.S. Dist. LEXIS 154082, at *5-6 (M.D. Fla. Aug. 26, 2022) (granting "service award" that was paid separately and apart from the class members, noting that the class members' recovery would not be impacted by the payment of the award); *Gibbs, et al. v. MLK Express Services, LLC, et al.*, No. 2:18-cv-434-MRM, (ECF No. 272) (M.D. Fla. June 17, 2022) (affirming an FLSA settlement agreement in a class action that contained a general release where the plaintiff was separately compensated and represented by counsel); *Martinez v. Woodvalley Landscape*, 2021 U.S. Dist. LEXIS 30908, at *4-5 n.1 (N.D. Ga. Feb. 17, 2021) (awarding service award as reasonable;

## V.    ATTORNEYS' FEES AND COSTS SHOULD BE APPROVED AS FAIR AND REASONABLE.

The settlement agreement provides for attorneys' fees in the amount of $416,666.67, which represents one third (1/3) of the $1,250,000.00 settlement fund.

The Parties' settlement is a "common fund" settlement. Notably, in the Eleventh Circuit, common-fund fee awards are properly calculated as a percentage of benefits made available to the class, regardless of whether each class member redeems the benefits made available to class members, or even whether unclaimed benefits revert to the defendant. *See Swaney v. Regions Bank*, 2020 U.S. Dist. LEXIS 101215, at *14-15 (N.D. Ala. June 9, 2020) (citing *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007) (holding that in determining counsel fees, trial court erred in calculating percentage of the fund on the basis of claims made against the fund rather than on the entire fund created by efforts of counsel));

---

noting that *Johnson* was distinguishable since it was not a Rule 23 opt-out class and the service awards were negotiated separately from the payments to the employees and did not diminish the amount that the employee received, instead, attorney's fees were reduced); *Roth v. Geico Gens. Ins. Co.*, 2020 U.S. Dist. LEXIS 188204, at *8 (S.D. Fla. Oct. 8, 2020) (noting that *Johnson* should not be extended to diversity cases where governing state law permits incentive awards, particularly when the incentive awards are to be paid separately and will not impact the recovery of any class member); *Caamal v. Shelter Mortgage Co., LLC*, 2013 U.S. Dist. LEXIS 138342, at *2-3 (M.D. Fla. Sep. 26, 2013) (finding an FLSA agreement containing a general release to be fair and reasonable where independent consideration for the release was given).

"The members of the class, whether or not they assert their rights, are at least the equitable owners of their respective shares in the recovery." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 481-82 (1980).

The Court should analyze this fee request under *Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768 (11th Cir. 1991).[6] As set forth below, in consideration of the *Camden I* factors, the Court should conclude that the requested fee is appropriate, fair, and reasonable and should be approved.

### A. The Law Awards Class Counsel Fees From the Common Fund Created Through Their Efforts.

It is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to attorneys' fees based upon the benefit obtained. *Lunsford v. Woodforest Nat'l Bank*, 2014 U.S. Dist. LEXIS 200716, at *31 (N.D. Ga. May 19, 2014) (citing *Camden I*, 946 F.2d at 771); *see also Boeing Co.*, 444 U.S. at 478; *see also Camden I*, 946 F.2d at 771 ("Attorneys in a class action in which a common fund is created are entitled to compensation for their services from the common fund, but the amount is subject to court approval.").

---

[6] *See, e.g., Duque v. 130 NE 40th St., LLC*, 2016 U.S. Dist. LEXIS 189154, at *8 (S.D. Fla. Jan. 27, 2016) (common fund settlement of hybrid Rule 23 class action/FLSA collective action requires application of *Camden I* common benefit doctrine); *see also Henderson v. 1400 Northside Drive, Inc.*, 1:13-CV-3767-TWT [ECF. No. 177] (N.D. Ga. Mar. 17, 2017) (approving attorney's fees in FLSA-only collective action settlement at one-third of $1,360,000 common fund).

Adequate compensation promotes the availability of counsel for aggrieved persons.

*Lunsford*, 2014 U.S. Dist. LEXIS 200716, at *32.

> The Eleventh Circuit held that:
>
> the percentage of the fund approach [as opposed to the lodestar approach] is the better reasoned in a common fund case. Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class.

*Id.* (quoting *Camden I*, 946 F.2d at 774); *see also Torres v. Bank of Am. (In re Checking Account)*, 830 F. Supp. 2d 1330, 1362 (S.D. Fla. 2011) ("[T]he Eleventh Circuit made clear in *Camden I* that percentage of the fund is the exclusive method for awarding fees in common fund class actions."). The Eleventh Circuit holds that a court determines a reasonable fee by evaluating the appropriate fee percentage for the case rather than by conducting a lodestar analysis. *Lunsford,* 2014 U.S. Dist. LEXIS 200716, at *31-33. This Court has discretion in determining that the requested one-third percentage of the fund fee is appropriate.

Here, the Court should find that Class Counsel are entitled to an award of one-third (1/3) of the $1,250,000 Settlement Fund secured through their efforts.

**B. Application of the *Camden I* Factors Supports the Requested Fee.**

The Eleventh Circuit has provided several factors courts should use to determine a reasonable percentage to award class action counsel:

(1) the time and labor required;

(2) the novelty and difficulty of the relevant questions;

(3) the skill required to properly carry out the legal services;

(4) the preclusion of other employment by the attorney as a result of his acceptance of the case;

(5) the customary fee;

(6) whether the fee is fixed or contingent;

(7) time limitations imposed by the clients or the circumstances;

(8) the results obtained, including the amount recovered for the clients;

(9) the experience, reputation, and ability of the attorneys;

(10) the "undesirability" of the case;

(11) the nature and length of the professional relationship with the clients; and

(12) fee awards in similar cases.

*Lunsford*, 2014 U.S. Dist. LEXIS 200716, at *34 (quoting *Camden I*, 946 F.2d at 772 n.3).

### 1. <u>Achieving the Settlement Required Substantial Time and Labor.</u>

Litigating, negotiating, and ultimately settling the claims in this action demanded considerable time and labor, supporting the reasonableness of Class Counsel's fee request. Class Counsel's contemporaneously-kept billing records reflect over 735 hours expended on this matter, including over 385 hours by Associate Edmund Celiesius, and over 100 hours each by Partners Jason T. Brown and Nicholas Conlon. *See* Celiesius Decl., ¶¶ 22-23. Class Counsel anticipates expending additional time and labor preparing for and attending the final fairness hearing, overseeing Settlement administration, assisting Settlement Class Members

and answering any questions, and tending to any issues that may arise relating to the Settlement.

Class Counsel spent significant time investigating the claims of Plaintiff and Opt-in Plaintiffs, interviewed numerous current and former employees from various states to gather information about Defendants' pay practices, served written discovery, conducted an in-person deposition in Kentucky, analyzed payroll data of Class Members for purposes of creating a damage model for mediation, and travelled to Atlanta, Georgia to attend the mediation. *Id.*, ¶¶ 25-26. The testimony, information, and data was essential to Class Counsel's ability to understand the facts, scope of claims, pertinent evidence, legal and factual arguments and potential defenses, pay practices and policies at issue, and potential remedies. *Id.*

Class Counsel expended significant resources researching and developing the legal theories and claims presented in the First Amended Complaint and creation of a damage model based on the Opt-in Plaintiffs' and Rule 23 Class Members' payroll data for purposes of mediation. *Id.* The process of developing the damage model ultimately stemmed from synthesizing and constructing an Excel sheet based on timekeeping and payroll data for the Opt-In Plaintiffs and Rule 23 Class Members. *Id.* This task alone resulted in considerable time expended by Class Counsel.

Additionally, Class Counsel spent time preparing Plaintiff's comprehensive mediation statement and attending the mediation.

After an agreement in principle was reached resulting in a signed term sheet, additional negotiations and discussions ensued. The negotiations of the settlement terms and Notice documents were lengthy and continuing for several weeks after the Parties reached an agreement in principle on a global settlement amount. *Id.* at ¶ 6. Each of the aforementioned efforts was essential to achieve the Settlement.

Accordingly, the time and resources Class Counsel devoted to this matter readily justify the requested fee.

## 2.  <u>The Issues Involved Were Novel and Difficult, and Required the Skill of Highly Talented Attorneys.</u>

Class Counsel have conferred a significant benefit on the Settlement Class on complex and highly technical wage-and-hour violations. *See Barrentine*, 405 U.S. at 743 (noting that the inherent nature of FLSA claims involves complex mixed questions of fact and law); *see also George*, 369 F. Supp. 3d at 1370 (finding that the FLSA and state wage and hour law claims and defenses are complex; litigating them would be both difficult and time consuming).

This settlement required significant analysis of large amounts of payroll data – and the efforts of highly skilled wage and hour attorneys with expertise in call center cases and regular rate violations. *See* Celiesius Decl., ¶¶ 15-18. Nuanced cases

like this case also require counsel highly trained in FLSA collective action and Rule 23 class action law and procedure, which Brown, LLC possesses. *Id.* Further, this matter created a significant risk for Class Counsel given the novelty and difficulty of the issues involved. Such risks included dispositive motions filed by each side, FLSA collective action decertification or denial of Rule 23 class certification and class relief, and a potential finding by the jury that the alleged violations were not "willful" or by the judge that Defendants satisfied the "good faith" defense to liquidated damages.

Plaintiff and the Class Members were represented by competent, experienced counsel with extensive experience in wage and hour class and collective action litigation. *Id.* In evaluating the quality of representation by Class Counsel, the Court should also consider the quality of opposing counsel. *Lunsford*, 2014 U.S. Dist. LEXIS 200716, at *39 (citing *Camden I*, 946 F.2d at 772 n.3). Throughout the litigation, Defendants were represented by capable counsel at Phelps Dunbar LLP, a law firm with over 350 attorneys. They were highly competent and professional adversaries. *See* Celiesius Decl., ¶ 19.

### 3.  Class Counsel Achieved an Excellent Result.

The Settlement made a total of $769,806.33 available for Plaintiff, Opt-in Plaintiffs and Rule 23 Class Members, exclusive of attorneys' fees, costs,

administration costs, and the General Release Payment. This exceeds the amount of $759,943.11 in estimated wages they could recover if they prevailed on their overtime claims and also prevailed on their off-the-clock claims to the extent of ten (10) minutes per day, despite the significant litigation risks faced by the Plaintiff, Opt-In Plaintiffs and Rule 23 Class Members. As such, the Settlement represents an extraordinary result. *Id.* at ¶ 5-9; *see also Pinon*, 2021 U.S. Dist. LEXIS 249510, at *21 (noting the fact that the amount of damages is less than the damages that some members of the class might hope to recover at trial does not present an obstacle to approval of the settlement agreement); *see In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 325 ("that the proposed settlement amounts to a fraction of potential recovery does not render the proposed settlement inadequate and unfair"). Rather than facing significantly more time in litigation without certainty as to recovery, the Authorized Claimants will receive an immediate financial benefit if the Settlement becomes final. *See* Celiesius Decl., ¶ 5-9.

### 4.  <u>The Claims Presented Serious Risk.</u>

The Settlement in the instant action is exceptional in light of the litigation risks summarized above in Section II(A). Defendants disputed whether the pre-shift work performed off-the-clock was compensable, that Defendants knew or should have known it was occurring, and whether non-base compensation was and/or

should have been incorporated into regular rates of pay for purposes of determining their overtime rates, and whether the regular rate claims would be substantiated. *See* Celiesius Decl., ¶¶ 9-13. Defendants presented multiple defenses to Plaintiff's claims, denying any and all liability, and denying the potential for liquidated damages and expanded limitations period for willful violations under the FLSA and Kentucky wage-and-hour laws. *Id.* Further, maintaining a Rule 23 class through trial, consisting of current and former employees with a five (5) year limitation period in a profession with high turnover, and maintaining a FLSA collective action of 159 Opt-in Plaintiffs would pose potential manageability concerns that Defendants would argue favor decertification of the FLSA collective and denial of any contested motion for class certification. *Lunsford*, 2014 U.S. Dist. LEXIS 200716, at *42; *see also* Celiesius Decl., ¶¶ 9-13.

Given the apparent risks, the $1,250,000 recovery accounted for in the Settlement Agreement constitutes an exceptional result.

### 5. <u>Class Counsel Assumed Considerable Risk to Pursue This Action on a Pure Contingency Basis, and Were Precluded from Other Employment as a Result.</u>

Class Counsel assumed significant risk undertaking this matter entirely on a contingent fee basis, assuming risk of nonpayment or underpayment. *See* Celiesius Decl., ¶ 20. Notably, a "contingency fee arrangement often justifies an increase in

the award of attorney's fees." *Lunsford*, 2014 U.S. Dist. LEXIS 200716, at *43; *see also In re Continental Ill. Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992) (holding that when a common fund case has been prosecuted on a contingent-fee basis, plaintiffs' counsel must be adequately compensated for the risk of non-payment).

Additionally, public policy supports Class Counsel's requested fee given that prosecution of this matter allowed for multiple individuals to obtain recovery who may have had relatively small damages individually. *See Bozeman v. Port-O-Tech Corp.*, 2008 U.S. Dist. LEXIS 124136, at *24-26 (S.D. Fla. Dec. 18, 2008) (noting that in FLSA cases, the damages may well be relatively small and that, however, does not necessarily require a finding that attorney's fees expended in furtherance of enforcing rights under the FLSA must be correspondingly small; if that were the case, FLSA clients might be expected to have difficulty finding representation, and congressional intent to ensure the enforcement of the provisions of the FLSA would be frustrated). Further, a contingency fee arrangement often justifies an increase in the award of attorney's fees. *See Lunsford*, 2014 U.S. Dist. LEXIS 200716, at *43-44 (citing *Behrens*, 118 F.R.D. at 548).

The duration of this matter further demonstrates the inherent risks faced by Class Counsel in accepting such cases on a contingency-fee basis. Despite Class Counsel's effort litigating this matter for nearly two (2) years, they remain

uncompensated for the time invested in the action plus the expenses advanced. *See* Celiesius Decl., ¶ 2, 20, 24.

Moreover, Plaintiff's engagement agreement with Class Counsel provided for a 40% contingency fee, but Class Counsel agreed to accept one-third (1/3) of the Gross Settlement Fund as its attorneys' fee for the action plus payment of its advanced expenses. *See* Celiesius Decl., ¶ 28; *McLendon v. PSC Recovery Sys.*, 2009 U.S. Dist. LEXIS 136999, at *6-7 (N.D. Ga. June 2, 2009) ("Class Counsel contracted [with plaintiff] for a 40% contingency fee with Class Counsel to pay expenses as they were incurred. Because Class Counsel has substantially lowered its fee expectations from the time of the contract with the clients, and from the market rate in other complex litigation, a 33.33% fee award is appropriate.").

### 6. <u>The Requested Fee Comports with Fees Awarded in Similar Cases.</u>

Courts within this Circuit have awarded attorney's fees of approximately one-third of a common fund in FLSA and wage and hour cases. *See Duque*, 2016 U.S. Dist. LEXIS 189154, at *3, n.9 (citing *Kimmel v. Venture Construction Co.*, 1:10-cv-01388-RLV (N.D. Ga. 2010) (ECF No. 70) (approving 30% of common fund as attorneys' fees and costs); *Moultry v. Cemex, Inc.*, 2008 U.S. Dist. LEXIS 126176 (M.D. Fla. Aug. 20, 2008) (awarding 32.35% of common fund as attorneys' fees); *Kemper v. Rent-A-Center, Inc.*, No. 4:00-cv-00435-RH-WCS [ECF Nos. 14-15]

(N.D. Fla. 2000) (awarding 33.33% of common fund approach to plaintiffs' counsel). This is consistent with awards in this Circuit of approximately one-third of a common fund in other types of cases. *See, e.g., George*, 369 F. Supp. 3d at 1383 (awarding class counsel 33% of common fund settlement); *Lunsford*, 2014 U.S. Dist. LEXIS 200716, at *33-34 (finding award of fees at one-third of common fund "falls within this accepted range and is in accord with this Court's prior fee rulings") (citing *In re Clarus Corp. Sec. Litig.*, 2005 U.S. Dist. LEXIS 50147 (N.D. Ga. Jan. 6, 2005) (awarding 33.33% of four million dollar settlement fund plus reimbursement of expenses)); *see also Waters v. International Precious Metals Corp.*, 190 F.3d 1291, 1297-98 (11th Cir. 1999) (affirming fee award of 33.33% on settlement of forty million dollars).

Plaintiff's request for approval of Class Counsel's one-third (1/3) fee falls within the range of private practice, where contingency-fee arrangements are often between 30 and 40 percent of any recovery. *See* Celiesius Decl., 28; *see also Reyes v. AT&T Mobility Servs., Ltd. Liab. Co.*, 2013 U.S. Dist. LEXIS 202820, at *10 (S.D. Fla. June 21, 2013) (approving fees from FLSA collective action settlement, holding "Class Counsel's request for one-third of the settlement fund is also consistent with the trend in this Circuit"); *Wolff v. Cash 4 Titles*, 2012 U.S. Dist. LEXIS 153786, at *4 (S.D. Fla. Sep. 26, 2012) ("One-third of the recovery is considered standard in a

33

contingency fee agreement."). Accordingly, Plaintiff's fee request is appropriate and conforms with attorneys' fees awarded in similar cases.

### 7. The Remaining *Camden I* Factors Also Favor Approving the Requested Fee.

The remaining *Camden I* factors support granting approval of Class Counsel's fees. As noted above, Class Counsel's experience in complex and sophisticated class action litigation was likely essential in reaching the result achieved here. Since Class Counsel was able to achieve substantial results in the most efficient manner possible without requiring additional protracted and extended litigation, the requested one-third percentage of the settlement should be approved. *See McLendon*, 2009 U.S. Dist. LEXIS 136999, at *10 (Pannell, J.) ("This swift and successful conclusion supports an upward deviation from the benchmark.").

Plaintiff respectfully requests that the Court award Class Counsel's attorneys' fees in the amount of one-third of the $1,250,000 Settlement Fund secured through their efforts. Plaintiff notes that under the Settlement Agreement and this Court's orders, Class Counsel's work on this case will not conclude with the requested final approval order. Class Members will likely continue to contact Class Counsel with questions or to resolve issues regarding the settlement.

**C. The Expense Request Is Appropriate.**

Plaintiff's request for approval of reimbursement from the Settlement Fund of $27,000 in litigation costs and expenses advanced by Class Counsel is also reasonable and justified. *Lunsford*, 2014 U.S. Dist. LEXIS 200716, at *48 (citing *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391-92 (1970)). This sum corresponds to certain actual out-of-pocket costs and expenses that Class Counsel necessarily incurred and paid in connection with the prosecution and settlement of the action. "Because Class Counsel has lost the use of this money for nearly two (2) years, the expenses requested are reasonable and necessary." *McLendon*, 2009 U.S. Dist. LEXIS 136999, at *12.

**D. The Settlement Administration Fees Should Be Awarded.**

Finally, Plaintiff requests that the Court approve payment of the Settlement Administrator's $13,177.00 settlement administration fee from the Settlement Fund. *See* Celiesius Decl., ¶ 30.

**VI.    CONCLUSION**

For the reasons set forth herein, Plaintiff's motion should be granted.

Dated: July 31, 2023                    Respectfully submitted,

                                        */s/ Edmund Celiesius*
                                        Edmund C. Celiesius (PHV)

35

Jason T. Brown (PHV)
Nicholas Conlon (PHV)
**BROWN, LLC**
111 Town Square Place, Suite 400
Jersey City, NJ 07310
TEL: (877) 561-0000
FAX: (855) 582-5297
ed.celiesius@jtblawgroup.com
jtb@jtblawgroup.com
nicholasconlon@jtblawgroup.com

Roger Orlando
Georgia Bar No. 554295
roger@orlandofirms.com
**THE ORLANDO FIRM, P.C.**
315 West Ponce De Leon Ave.
Suite 400
Decatur, GA 30030
Telephone: (973) 898-0404

*Class Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on July 31, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system. Parties may access this filing through the Court's System.

*/s/ Edmund Celiesius*
Edmund C. Celiesius (PHV)

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1, the undersigned certifies that this motion complies with the font and point selections permitted by L.C. 5.1. This document was prepared on a computer using the Times New Roman font (14 point).

*/s/ Edmund Celiesius*
Edmund C. Celiesius (PHV)